Sarah DOE and Thomas Doe, on behalf of themselves and their minor child, Jan Doe, Plaintiffs,

v.

HARLAN COUNTY SCHOOL DISTRICT and Don Musselman, in his official capacity as Superintendent of the Harlan County School District, Defendants.

No. CIV.A. 99–508.

United States District Court,
E.D. Kentucky,
London Division.

May 5, 2000.

Everett C. Hoffman, Segal Stewart Cutler Catlett, Linsay & Janes, David A. Friedman, American Civil Liberties Union of Kentucky, Kathleen M. Flynn, Sales, Tillman & Wallbaum, C. Laurie Griffith, Griffith Law Offices, PSC, ACLU Cooperating Attorney, Louisville, KY, for Jane Doe(s), Suing as Sarah Doe, John Doe(s), Suing as Thomas Doe, Individually, Jane/John Doe(s), Suing as Sarah Doe and Thomas Doe, on behalf of their minor child, Jan Doe nfr Jane Doe(s), plaintiffs.

Theodore H. Amshoff, Jr., Amshoff & Amshoff, PSC, Louisville, KY, Johnnie L. Turner, Johnnie L. Turner, PSC, Harlan, KY, Ronald D. Ray, Colonel, Cty. Sch. Dist., et al., Crestwood, KY, for Harlan County School District, Don Musselman, in his official capacity as Superintendent of the Harlan County School District, Official Defendants.

### ORDER

COFFMAN, District Judge.

This matter, which presents a First Amendment challenge to multiple displays of the Ten Commandments and other documents,[1] is before the court upon the plaintiffs' motion for a preliminary injunction (No. 2), the plaintiffs' motion for a protective order (No. 4), the defendants' motion to dismiss (No. 12), the defendants' motion for a more definite statement (No. 14), and the defendants' motion to strike the affidavit of Sarah Doe (No. 16).[2] This court held a hearing on April 20, 2000 and, having reviewed the arguments of counsel and being otherwise sufficiently advised, will grant the plaintiffs' motions and will deny the defendants' motions.

### Motion to Dismiss

For the reasons explained below, the plaintiffs have stated a claim for a First Amendment violation. The defendants also have raised two procedural grounds for their motion to dismiss, arguing that the plaintiffs lack standing to bring their claims and that they were ineffectually served.

■ The defendants contend that the plaintiffs lack standing to bring these actions because they have not alleged "injuries in fact." The injury-in-fact component of standing requires a plaintiff to have a personal stake in the matter to be adjudicated. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The defendants correctly note that abstract or hypothetical injuries are insufficient. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The plaintiffs in this lawsuit, however, have suffered and are under the threat of suffering concrete injuries.

■ In *Washegesic v. Bloomingdale Public Sch.*, 33 F.3d 679, 683 (6th Cir. 1994), the court considered a challenge to a public school's display of a portrait of Jesus. A former student was determined to have standing because he would come into unwelcome direct contact with the display while visiting the school to attend sporting events or meet former teachers. *Id.* The court held that even a member of the PTA or of the public would have standing if she

---

1. The subject displays originally included only the Ten Commandments. Because the court here concludes that later modifications of the exhibits were merely a futile attempt to render constitutional the original Ten Commandments displays, those alterations were analytically meaningless when measured by the Establishment Clause of the First Amendment. The court thus uses interchangeably the terms "Ten Commandments displays," "religious displays," "displays of the Ten Commandments and other documents," and similar phrases to describe the exhibits here at issue.

2. This is one of three companion cases, simultaneously filed, which attack such displays. Any minimal variances among the three displays possess no legal significance for the purpose of the motions now pending before the court. Having observed that the case records also share similar complaints, memoranda, and motions and that the three cases share identical lead counsel on both sides, the court combined the three for oral argument and today enters virtually identical opinions—with necessary but slight factual variations—in all three.

attended events in the school and "took the portrait as a serious insult to her religious sensibilities." *Id.* Like the plaintiff in that case, the plaintiffs here—a current Harlan County school student and her parents—have standing because they must come into contact with the displays of the Ten Commandments, whenever they enter the Harlan County schools to attend classes, parent-teacher conferences, or other meetings. Their contact with the displays of the Ten Commandments is far more regular than that of the former student in *Washegesic.*

The defendants cite several Seventh Circuit cases holding that in order to have standing in an Establishment Clause challenge, a plaintiff must undertake a special burden or alter his or her normal routine to avoid the offensive object. In *Gonzales v. North Township of Lake County, Ind.,* 4 F.3d 1412 (7th Cir.1993), for example, the plaintiffs challenged the presence of a crucifix in their city's park. The plaintiffs' discontinued use of an area within the park conferred standing. *Id.* at 1417. Here, the plaintiffs have not specifically alleged that the displays have forced them to alter their normal routines. The necessary alterations would be highly impractical, however, because the plaintiff student in this action must attend her middle school, and therefore, the individual plaintiffs have met the standing requirement for their First Amendment claim.

The defendants next claim that they were not properly served under Fed. R.Civ.P. 4. Rule 4(j)(2) provides that a county may be served "by serving the summons and complaint in the manner prescribed by law of that state for the service of summons." The Kentucky Rules of Civil Procedure allow a summons to be served by mail. Ky. R. Civ. P. 4.01(a). Under the Kentucky rule, the clerk of court actually mails the summons. Here, the plaintiffs placed the summons in the mail themselves, and the defendants argue that the service was ineffective because the clerk of court did not place the summons in the mail. The federal clerks of court do not, however, place summons in the mail for plaintiffs. The Federal Rules of Civil Procedure permit service "in the manner" allowed by their state counterparts—here, mailing. That the plaintiffs rather than a clerk of court mailed the summons does not render it ineffective. Accordingly, the defendants' motion to dismiss will be denied.

### Motions for a Protective Order, for a More Definite Statement, and to Strike the Affidavit of Sarah Doe

The plaintiffs have moved for a protective order permitting them to proceed under the pseudonyms Sarah, Thomas, and Jan Doe. The defendants ask the court to order a more definite statement and to strike the affidavit of Sarah Doe based on the anonymity of the plaintiffs. For the reasons stated below, the court will grant the plaintiffs' motion and will deny the defendants' motions.

Generally, a complaint must state the names of all parties. Fed. R.Civ.P. 10(a). However, the court may recognize an exception to this rule and permit plaintiffs to proceed pseudonymously. *Doe v. Shakur,* 164 F.R.D. 359, 360 (S.D.N.Y.1996). Several factors guide the analysis of whether a plaintiff's privacy interest substantially outweighs the presumption of open judicial proceedings. *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir.1981); *Doe v. Shakur,* 164 F.R.D. 359, 360 (S.D.N.Y.1996). These factors include: (a) whether the plaintiffs seeking anonymity are suing to challenge governmental activity, (b) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy," and (c) whether a child plaintiff is involved. *Stegall,* 653 F.2d at 185. In this case, these factors justify the plaintiffs' anonymity.

Plaintiffs Sarah and Thomas Doe, adult citizens residing in Harlan County, Kentucky, are the parents of the minor child Jan Doe, who attends a middle school in the Harlan County School District. By

challenging the school district's practice of hanging the Ten Commandments in classrooms, the plaintiffs are challenging governmental activity. The anonymity of the plaintiffs will not adversely affect the defendants. The plaintiffs seek only an injunction, not individual damages. Because of the public's interest in this issue, the plaintiffs may be subjected to humiliation and harassment if their identities are disclosed.

In a similar case, the Fifth Circuit held that the showing of possible harm, the risk of serious social ostracization based upon religious attitudes, and the fundamentally private nature of religious beliefs required that a child litigant remain anonymous. *Doe v. Stegall,* 653 F.2d at 185. Because this case also involves a religious matter, a child litigant, and a community which is highly interested in this issue's resolution, a balancing of interests justifies the plaintiffs' continued anonymity. Thus, the plaintiffs are entitled to a protective order permitting them to proceed pseudonymously, and the defendants' motion for a more definite statement will be denied.

The defendants also contend that Jan Doe is not a necessary and indispensable party to this action. The court rejects this argument because as a Harlan County student, Jan Doe has daily contact with the challenged displays.

Having concluded that the plaintiffs are entitled to proceed pseudonymously, the court will deny as moot the defendants' motion to strike the affidavit of Sarah Doe on the basis of her anonymity.

### Preliminary Injunction

A preliminary injunction preserves the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). To receive a preliminary injunction, a plaintiff must establish: (1) a strong or substantial likelihood of success on the merits; (2) that he or she will suffer irreparable harm in the absence of an injunction; (3) that others will not suffer substantial harm if the injunction is granted; and (4) that an injunction will serve the public interest. *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998). These four factors guide the discretion of the court and are not unbending prerequisites. *Id.*

A party need not prove his or her case in full at a preliminary-injunction hearing. *Camenisch,* 451 U.S. at 395, 101 S.Ct. 1830. The court must, however, make findings of fact and conclusions of law, which are not binding on a trial on the merits, *United States v. Owens,* 54 F.3d 271, 277 (6th Cir.1995), when deciding a motion for a preliminary injunction. The court need not make specific findings of fact regarding each of the four factors if fewer are dispositive. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1076 (6th Cir.1994). In a case brought under the First Amendment, the likelihood of success on the merits frequently may be the determinative factor. *Connection Distrib.,* 154 F.3d at 288.

### Findings of Fact

The schools in Harlan County School District have copies of a version of the Ten Commandments posted in their classrooms, including the classroom of Jan Doe. When this suit was filed, the displays consisted of framed copies of one version of the Ten Commandments which were not part of larger educational, historical, or retrospective exhibits. After this lawsuit was filed, the defendants amended the displays to include several other documents.[3] At oral argument, the defendants conceded

---

**3.** The defendants argue that because they altered the displays, the plaintiffs' complaint is moot. Their argument fails because the new displays are effectively a continuation of the original displays, and the plaintiffs raise the same objections to the amended displays. At oral argument, the defendants stated that unidentified members of the community decided on the displays' content. In their briefs, the defendants state that the Harlan County School Board formulated the exhibits. For First Amendment purposes, the contrast presents no analytical distinction. *Allegheny,* 492 U.S. at 600, 109 S.Ct. 3086.

that they did so in an attempt to bring the displays within the parameters of the First Amendment and to insulate themselves from suit. The displays, both in their original form and as amended, are readily visible to the plaintiffs and to other students who attend the schools.

As they now exist,[4] the displays consist of (1) an excerpt from the Declaration of Independence; (2) the Preamble to the Constitution of Kentucky; (3) the national motto of "In God We Trust"; (4) a page from the Congressional Record of Wednesday, February 2, 1983, Vol. 129, No. 8, declaring it the Year of the Bible and including a copy of the Ten Commandments; (5) a proclamation by President Abraham Lincoln designating April 30, 1863 a National Day of Prayer and Humiliation; (6) an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible" reading, "The Bible is the best gift God has ever given to man."; (7) a proclamation by President Ronald Reagan marking 1983 the Year of the Bible;[5] (8) the Mayflower Compact; (9) a recently enacted Kentucky statute, K.R.S. 158.195, which the defendants allege permits the posting of the Ten Commandments;[6] and (10) a Harlan County School Board resolution permitting the posting of the Ten Commandments. While some of the documents are displayed in their entirety, the defendants have excerpted a small portion of others to include only that document's reference to God or the Bible with little or no surrounding text.

---

4. At oral argument, it appeared that the original exhibits of the Ten Commandments were removed and replaced with the text of the Congressional Record, which includes a copy of the Ten Commandments. For purposes of this motion, either scenario produces the same result.

5. The defendants' brief states that the displays include the Presidential proclamation, while their exhibits omit that document. This dis-

*Conclusions of Law*

*1. Likelihood Of Success On The Merits*

The plaintiffs seek injunctive and declaratory relief under 42 U.S.C. § 1983, arguing that the continued posting of the Ten Commandments in the Harlan County schools violates their First Amendment rights. Section 1983 creates a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. *See Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). Section 1983 does not create separate substantive rights, but merely provides a method of vindicating independently conferred federal rights. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A plaintiff must allege two elements to establish a prima facie case under § 1983:(1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In a § 1983 case brought against a defendant in his official capacity, the governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, in an official-capacity suit, the entity's policy or custom must have played a part in the violation of federal law. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Here, the plaintiffs have shown a substantial likelihood of success on the merits for both elements required by a § 1983 claim. First, as shown by the Board's

---

crepancy is unimportant for the purposes of this motion.

6. The statute authorizes the reading and posting of "texts and documents on American history and heritage," including "the published text of the Congressional Record." K.R.S. 158.195. The statute further states: "There shall be no content-based censorship of American history or heritage in the Commonwealth based on religious references in these writings, documents, and records." *Id.*

resolution, the posting of the Ten Commandments was the official policy of the Harlan County schools, approved by the school board and other school officials. That policy serves as a driving force behind the constitutional violations alleged in this case. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Although the defendants contend that a group of county residents chose the displays' contents, the displays are nevertheless attributable to the county because they were posted in accordance with an official policy promulgated by the school board.

 Second, violations of the First Amendment such as those alleged in this case are remediable through a § 1983 claim. The First Amendment declares, "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend 1. Pursuant to the Establishment Clause of the First Amendment, governmental bodies may not "take a position on questions of religious belief or [make] adherence to a religion relevant in any way to a person's standing in the political community." *County of Allegheny v. ACLU,* 492 U.S. 573, 594, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). Government actions challenged under the Establishment Clause are reviewed under the three-part test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under *Lemon,* the governmental action must first have a secular purpose and "second, its principal or primary effect must be one that neither advances nor inhibits religion." Finally, the governmental action must not lead to "excessive governmental entanglement with religion." *Id.* at 612–13, 91 S.Ct. 2105. In the past decade, the Supreme Court has reframed the *Lemon* analysis, focusing on whether either the purpose or the effect of the challenged governmental action results in the endorsement of religion. *Edwards v. Aguillard,* 482 U.S. 578, 585, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987). Courts in this circuit treat the endorsement test as a refinement or clarification of the *Lemon* analysis, *Granzeier v. Middleton,* 173 F.3d 568, 573 (6th Cir.1999), and this court will apply that test to decide whether the Ten Commandments displays, both in their original form and as amended, pass constitutional muster.

 The endorsement test forecloses governmental action that "a reasonable observer would think is an endorsement of religion by the government." *Id.* Justice O'Connor formulated the endorsement test, explaining:

> The purpose prong of the *Lemon* test asks whether government's actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. An affirmative answer to either question should render the challenged practice invalid.

*Lynch,* 465 U.S. at 690, 104 S.Ct. 1355 (O'Connor, J., concurring).[7] In other words, the challenged conduct must have both an actual secular purpose and also the effect of neither advancing nor hindering religion. Because the government's use of a religious reference or of an object with religious meaning may be appropriate under some circumstances but not others, the court must assess the constitutionality of government conduct with careful attention to the manner and context of the action. *Compare Allegheny,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472, *with Lynch,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (display of creche held unconstitutional in former but constitutional in latter).

---

**7.** The endorsement test was adopted by a majority of the Court in *Allegheny,* 492 U.S. at 595, 109 S.Ct. 3086.

The purpose prong of the endorsement analysis asks whether a secular purpose actually motivated the government's action.

> In considering the purpose prong ... the focus of the inquiry is on the intentions of the government. Namely, did the government intend to convey a message of endorsement or disapproval of religion when it implemented the challenged policy. Courts should generally be deferential to the government's articulation of a secular purpose. The government's secular purpose, however, must be sincere and not a mere sham. Although the government's purpose need not be exclusively secular, a practice will violate the Establishment Clause if it is entirely motivated by a purpose to advance religion.

*Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 384 (6th Cir.1999), *citing Edwards v. Aguillard*, 482 U.S. 578, 585–86, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Lynch*, 465 U.S. at 681 n. 6, 104 S.Ct. 1355; *Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). *See Granzeier*, 173 F.3d at 574. Here, the court will look to the school district's proffered purpose as stated in the Board's resolution, the brief history of the Ten Commandments displays, and the displays themselves to determine whether the displays serve an actual, secular purpose.

█ In their original form, the Ten Commandments displays, consisting only of the Commandments unaccompanied by any other documents, lack any secular pur-

pose. The Ten Commandments are a distinctly religious document, believed by many Christians and Jews to be the direct and revealed word of God, and their very nature precludes a finding of a prevailingly secular purpose here. Indeed, "the pre-eminent purpose for posting the Ten Commandments ... is plainly religious in nature." *Stone v. Graham*, 449 U.S. 39, 41, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).[8]

> The Commandments do not confine themselves to arguably secular matters, such as honoring one's parents, killing or murder, adultery, stealing, false witness, and covetousness. See Exodus 20:12–17; Deuteronomy 5:16–21. Rather, the first part of the Commandments concerns the religious duties of believers: worshiping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day. See Exodus 20:1–11; Deuteronomy 5:6–15.

*Id.* at 41–42, 101 S.Ct. 192. In their briefs and at oral argument, the defendants suggest that the Ten Commandments were posted in order to teach Harlan County students about American religious history and the foundations of the modern state. The defendants also concede that the displays purport to demonstrate America's Christian heritage.[9] The narrow scope of the displays—a single religious text unaccompanied by any interpretation explaining its role as a foundational document—can hardly be said to present meaningfully the story of this country's religious traditions, and for this court to conclude that

---

8. While the defendants suggest that *Stone* is inapplicable here because it dealt with legislative action and declared the posting of the Ten Commandments to be unconstitutional without the benefit of full briefing, it nevertheless is still good law and this court is bound by its precedential value. The court cites the case today merely to establish that the Ten Commandments are a distinctly religious text and that their posting has a religious purpose.

9. Such an overtly Christian purpose violates the Establishment Clause. While the court recognizes that the Christian tradition has

played an important role in American culture, the defendants' reliance on *Church of the Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), is misplaced. In that case, the Supreme Court examined whether a service contract between an incorporated church and a foreign minister fell within the purview of a statute regulating the import of foreign laborers. The Court's analysis focused upon and delineated rules of statutory construction and did not entail First Amendment jurisprudence. Indeed, the language cited by the defendants is dicta and is neither that Court's ruling nor vital to its ruling.

the original displays had a secular purpose belies reason.

The challenged displays now include other documents which the defendants argue illustrate the displays' secular purpose: the education of Harlan County students concerning American religious history. As the Supreme Court has made abundantly clear in its articulation of the endorsement test, the court must examine the actual purpose of the use of the religious objects and should not blindly accept an allegedly secular purpose which is contrary to the facts of the case. Furthermore, the requirement of a secular purpose "is not satisfied ... by the mere existence of some secular purpose, however dominated by religious purposes." *Lynch*, 465 U.S. at 691, 104 S.Ct. 1355 (O'Connor, J., concurring). While the government's stated purpose may be entitled to some deference, the history of the displays here and the choice of documents in those displays contradict the County's assertion. That the displays originally consisted solely of the Ten Commandments and that they were altered—albeit without any legally significant change—only after this lawsuit was filed weigh heavily against the finding of a secular purpose.

The displays were posted because of the Board's resolution, but the resolution serves no secular purpose. The resolution's repeated references to religion make clear that the postings were to made in order to promote and endorse religion. Likewise, a review of the other documents in the displays forecloses a characterization of the purpose of the displays as secular. The county narrowly tailored its selection of foundational documents to incorporate only those with specific references to Christianity and texts that, while promulgated by the federal government, were chosen solely for their religious references. The displays do not appear to have been intended to educate Harlan County students, in a balanced or accurate manner, about the traditions and texts that were drawn upon by this nation's founders or about the complex role religion has played in this country's history. In short, as shown by the facts of the case and the displays themselves, the exhibits—both in their original form and as altered—serve no secular purpose, nor were they ever intended to do so. As the displays clearly lack a secular purpose, they violate the First Amendment and the court's analysis need go no further. *See Wallace*, 472 U.S. at 56, 105 S.Ct. 2479. The court, however, will complete the *Lemon* analysis to determine whether the effect of the displays also violates the Establishment Clause.

In determining such an effect, the court must ask whether an objective observer acquainted with the displays would perceive them as a governmental endorsement of religion. *See ACLU v. Capitol Square Review and Advisory Bd.*, 210 F.3d 703 (6th Cir.2000). The objective-observer standard parallels the reasonable-person standard in torts law; the question is not whether one particular, subjective, uninformed observer would view the displays as an endorsement of religion but whether an objective, reasonable, knowledgeable observer would do so. Here, the prevailing effect of the displays is one of governmental endorsement of religion.

The overriding theme of each individual document as presented in the displays and of the displays as a whole is one of religion and more specifically of Christianity. The first document is a copy of the Congressional Record from February 2, 1983, proclaiming that year the Year of the Bible and reflecting the remarks of Representative Phillip M. Crane about his personal beliefs concerning the importance of the Bible and the Ten Commandments, a version of which is included in the remarks. The next document consists of two brief excerpts: one from the Declaration of Independence, "All men ... are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness," and one from the Constitution of Kentucky, "We, the people of the Commonwealth of Kentucky, grateful to Almighty God for the

civil, political and religious liberties we enjoy, and invoking the continuance of these blessings, do ordain and establish this Constitution." The next document is President Lincoln's Proclamation of a Day of Prayer. Issued in 1863, it confesses to God and seeks forgiveness for national sins committed during the Civil War. Another presidential proclamation follows, from President Reagan, declaring 1983 the Year of the Bible in honor of its influence in shaping America.[10] A copy of the May-flower Compact follows, in which the colony's founders invoke "the name of God" and explain that their journey was taken, among other reasons, "for the glory of God and advancement of the Christian faith." Finally, bearing a picture of Abraham Lincoln, the next states, "The Bible is the best gift God has ever given to man." Also posted is the Board's resolution, which, as discussed above, is overtly religious.

While a display of some of these documents may not have the effect of endorsing religion in another context, they collectively have the overwhelming effect of endorsing religion within the context of these displays. No reasonable observer of the displays could conclude otherwise. Each and every document refers to religion. Several have been edited to include only their religious references. Indeed, the only unifying element among the documents is their reference to God, the Bible, or religion. Furthermore, the displays lack an explanation of the documents' historical significance or of the reasons for their references to religion. Removed from their historical context and placed with other documents with which the only common link is religion, the documents have the undeniable effect of endorsing religion.

The defendants argue that the Harlan County displays cannot be held to violate the First Amendment because they include excerpts from texts which have been held to be constitutional despite references to God or religion. They point specifically to

this nation's motto of "In God We Trust" and the phrase "one nation under God" found in the Pledge of Allegiance. The defendants' argument, however, fails. First, as to several of the documents, the defendants did not include the entire text or even a meaningful section of each text. Rather, they narrowly extracted only the sections directly mentioning God. This effectively changed the meaning and significance of each of the documents from the original, particularly when read in conjunction with the rest of the Ten Commandments displays. Second, and more generally, in upholding examples of ceremonial deism, such as the phrase "In God We Trust," courts have pointed to the longstanding existence of such phrases as well as their non-sectarian nature, concluding that "a reasonable observer, aware of the purpose, context, and history of the phrase ..., would not consider its use ... to be an endorsement of religion." *ACLU v. Capitol Square Review and Advisory Bd.*, 210 F.3d at 721, (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.1996)). *See Allegheny*, 492 U.S. at 602–04, 109 S.Ct. 3086. Here, there is neither a longstanding tradition of posting the Ten Commandments in county schools nor any secular purpose for doing so. As the court has explained, a reasonable observer would conclude that the Ten Commandments displays represent a governmental endorsement of religion, rather than merely a traditional manner of solemnizing a government meeting or giving a stamp of legitimacy to national currency. To the extent the defendants have invited this court to break with precedent and hold that the posting of the Ten Commandments should be viewed as only another example of ceremonial deism, the court declines to do so.

The defendants direct the court's attention to three cases in which other courts held Ten Commandments displays to be constitutional. All three of the cases are distinguishable from this case. In *Books*

---

**10.** As explained above, whether President Reagan's proclamation is still part of the dis-

plays does not affect this court's resolution of the pending motions.

*v. City of Elkhart, Ind.,* 79 F.Supp.2d 979 (N.D.Ind.1999), the district court held that a fifty-eight-year-old stone monument containing, among other things, a copy of the Ten Commandments, did not violate the Establishment Clause. The monument was merely one of several historical and cultural plaques and memorials, all donated by private parties, standing on the edges of a city-owned lot, removed from government buildings. *Anderson v. Salt Lake City Corp.,* 475 F.2d 29 (10th Cir. 1973), considered an identical memorial, which it held to be constitutional. That opinion, however, has been called into question by the Tenth Circuit, which noted that it was decided before *Stone* and which commented that "more recent cases [cast] doubt on the validity of our conclusion that the Ten Commandments monolith is primarily secular in nature." *Summum v. Callaghan,* 130 F.3d 906, 910 n. 2 (10th Cir.1997)(decided on grounds of freedom of speech). Here, the Ten Commandments displays are not in an area with other memorials and are not incorporated as part of larger, secular sculptures or displays. Furthermore, the court's holding in *Elkhart* that the Ten Commandments should be considered to be secular is by no means definitive in light of the Supreme Court's holding in *Stone,* and the holding in *Elkhart* was largely dependent upon the manner in which the Commandments were displayed, differing greatly from the Ten Commandments displays here.

Similarly, in *Suhre v. Haywood County, N.C.,* 55 F.Supp.2d 384 (W.D.N.C.1999), the court held that a granite frieze in a courthouse did not violate the Establishment Clause. That sculpture recounted the historical development of the law, with images of "the blind Goddess of Justice, now called Lady Justice[,] ... ancient gods and goddesses, and the laws of Rome and the Tribes of Israel." *Id.* at 386. On either side of Lady Justice, who bears the Scales of Justice in one hand and holds the Sword of Justice in another, were two marble plaques bearing the Ten Commandments. The court noted that the courthouse had been entered into the National Register of Historic Places by the United States Department of the Interior, with special note paid to the sculpture, which could not be removed without its destruction. The court held that the purpose in sculpting the frieze was to display artistically the history of ethics, civilization, and the law, and that when viewed as a whole the sculpture did not communicate a governmental endorsement of religion. Again, the Ten Commandments displays challenged here are not part of larger artistic renderings or academic displays encompassing a wide range of cultural, religious, and legal traditions. Instead, they are narrowly tailored displays, intended to convey and having the effect of conveying a very specific governmental endorsement of religion.

The First Amendment will not permit such an endorsement, as "it sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Allegheny,* 492 U.S. at 595, 109 S.Ct. 3086, *quoting Lynch,* 465 U.S. at 688, 104 S.Ct. 1355. If the governmental display endorses religion then the constitutionally impermissible message must be removed, as it attacks this nation's "history and tradition of religious diversity that dates from the settlement of the North American Continent" and "the religious diversity that is our national heritage." *Id.* at 589, 109 S.Ct. 3086. Here, the displays communicate a governmental endorsement not only of religion over non-religion, but of the particular religion, Christianity,[11] whose

---

11. Notably, the defendants did not post a Hebrew version of the Ten Commandments and in selecting a version of the Ten Commandments had to choose among several differing translations, some favored by particular Christian sects over others. The other docu- ments in the displays reinforce their distinctly Christian theme. To the extent that the displayed version of the Ten Commandments may be favored by one sect over another, the displays run further afoul of the Establish-

message is contained within the displays. Both in the impetus for their creation and the manner in which they were assembled, the displays evidence a governmental purpose and effect of endorsing Christianity, and therefore the displays violate the Establishment Clause of the First Amendment. Thus, the court concludes that the plaintiffs have shown a strong likelihood of success on the merits.

### 2. Irreparable Harm

 The loss of First Amendment freedoms and the violation of an individual's First Amendment rights "for even minimal periods of time[ ] unquestionably constitute[ ] irreparable injury." Connection Distrib., 154 F.3d at 288, citing Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality). See also Dayton Area Visually Impaired Persons, Inc., v. Fisher, 70 F.3d 1474, 1490 (6th Cir.1995). Thus the plaintiffs have shown that failure to grant the relief sought will result in their suffering irreparable harm.

### 3. Harm to Others

If the court grants the preliminary injunction sought by the plaintiffs, the defendants will be required to remove the religious displays from the sites upon which they are posted. This will require little expense. Should the defendants be successful at a trial on the merits, they may construct the displays again at little expense.

 The defendants argue that an order requiring the removal of the Ten Commandments and accompanying documents would infringe on their First Amendment right to free speech and would be tantamount to censorship. The defendants'

concerns, however, are misplaced. The actions of the Superintendent and the school board and its members are distinguishable from those of private citizens. Their actions are subject to First Amendment scrutiny because they acted in their official capacities when they authorized the posting of the Ten Commandments and of the revised displays in the Harlan County schools. The Establishment Clause of the First Amendment restricts the conduct of the government and its agents, not of private citizens. Allegheny, 492 U.S. at 590, 109 S.Ct. 3086. Thus, the action of a government official creating such an exhibit in a public area of a school is analytically distinct from that of a private citizen who, for example, posts a copy of the Ten Commandments in his own home, in his front yard, or in his private business. The private citizen's actions do not implicate the Establishment Clause of the First Amendment. The speech at issue here was not that of private citizens, but of the government itself.[12] Thus, the removal of the displays at issue here will not infringe upon the defendants' First Amendment free speech rights. See Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993).

The Kentucky statute which the defendants argue permits the posting of the displays here does not mitigate the unconstitutionality of the displays. The Supremacy Clause does not permit a state statute to authorize unconstitutional behavior. See, e.g., King v. Ford Motor Co., 209 F.3d 886 (6th Cir.2000). In some situations, religion may be appropriately discussed within a public school—for example, in a discussion of the founding and

ment Clause because they infringe upon the "sectarian differences among various Christian denominations [that] were central to the origins of our Republic." Allegheny, 492 U.S. at 589, 109 S.Ct. 3086.

**12.** The court notes, however, that the Harlan County School District cannot avoid the strictures of the Establishment Clause by allowing private citizens or religious organizations to

post Ten Commandments displays in Harlan County schools. To do so would simply show "that the government is endorsing the religious message of that organization, rather than communicating a religious message of its own. . . . It also prohibits the government's support and promotion of religious communications by religious organizations." Allegheny, at 600, 109 S.Ct. 3086.

government of the Massachusetts Bay Colony in an American History class or a lecture on *Moby Dick* or *The Scarlet Letter* in an American Literature course. Neither of these appropriate contexts is present here.

Rather than limiting the religious speech of private citizens, the First Amendment ensures, in two separate ways, the freedom to engage in such speech and in doing so protects the public's interest. First, "private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). Thus, the Free Speech clause would, for example, preclude a county government from fining a private citizen for carrying a copy of the Ten Commandments or discussing the Ten Commandments with others. Second—and more central to the case at hand—the Establishment Clause guarantees that private citizens can think and speak freely on religious matters without fear of government coercion or penalty. Absent the Establishment Clause, a county government could pass an ordinance requiring all county residents to adhere to a certain religious sect or practice or to abstain from all religious acts. For example, the government could require all citizens to convert to Islam on threat of imprisonment or could heavily fine anyone who entered a church. Clearly, such governmental conduct is at odds with the United States Constitution, which established this nation as a democracy, not as a theocracy. Subtler forms of government-sanctioned religious intolerance also serve to limit freedom of religious thought, speech, and practice and are therefore unconstitutional.

*4. The Public Interest*

As explained above, the protection of First Amendment rights and vindication of constitutional violations is always in the public's interest. *Connection Distrib.*, 154 F.3d at 288; *Dayton Area Visually Impaired*, 70 F.3d at 1490; *G & V Lounge,*

*Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir.1994). Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for a preliminary injunction is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that the Ten Commandments displays shall be removed from the Harlan County schools **IMMEDIATELY**.

**IT IS FURTHER ORDERED** that neither the defendants nor any Harlan County School District officials, acting in their official capacity, shall erect or cause to be erected similar displays anywhere else in Harlan County, Kentucky.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for a protective order is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for a more definite statement is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to strike the affidavit of Sarah Doe is **DENIED**.