AMERICAN CIVIL LIBERTIES UN-
ION OF KENTUCKY; Louanne
Walker and David Howe, Plaintiffs,

v.

MCCREARY COUNTY, KENTUCKY;
and Jimmie Greene, in his official ca-
pacity as McCreary County Judge Ex-
ecutive, Defendants.

No. CIV.A. 99–507.

United States District Court,
E.D. Kentucky,
London Division.

June 22, 2001.

Everett C. Hoffman, Segal, Stewart, Cutler, Lindsay, Jones & Berry, PLLC, David A. Friedman, American Civil Liberties Union of Kentucky, C. Laurie Griffith, Griffith Law Offices, PSC, ACLU Cooperating Attorney, Louisville, KY, Kathleen M. Flynn, Illinois State Appellate Defender, Chicago, IL, for plaintiffs.

Theodore H. Amshoff, Jr., Amshoff & Amshoff, PSC, Louisville, KY, Ronald D. Ray, Colonel, Crestwood, KY, Mathew D. Staver, Erik W. Stanley, Liberty Counsel, Longwood, FL, for defendants.

### ORDER

COFFMAN, District Judge.

This matter is before the court upon the plaintiffs' motion (Record No. 40) for a supplemental preliminary injunction. The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion and enjoin the continued exhibition of the current displays.

### Facts

This consolidated case involves the efforts of McCreary and Pulaski Counties and the Harlan County schools to post the Ten Commandments. Having evolved throughout this litigation, the displays at issue originally consisted of only a framed copy of the Ten Commandments. After several other documents were added, this court found that the amended displays[1] failed the "purpose" and "effect" prongs of the three-part test set out in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971),[2] in that they lacked a secular purpose[3] and had the effect of endorsing religion. *ACLU of Ky. v. McCreary County*, 96 F.Supp.2d 679, 689 (E.D.Ky.2000). Accordingly, this court ordered the immediate removal of the displays from the courthouses and school system.

The defendants then erected a third set of displays which also included the Ten Commandments. Those displays, entitled "The Foundations of American Law and Government Display," included the full text of the Magna Carta as enacted in 1215 A.D., the Declaration of Independence, the Bill of Rights of the Constitution of the United States, the Star Spangled Banner, the Ten Commandments with a Biblical citation, and the Mayflower Compact of 1620; a picture of Lady Justice and an explanation of its significance; the National Motto of the United States ("In God We Trust") emblem and the Preamble to the Kentucky Constitution; and an explana-

---

1. While they varied as to content, all three amended displays were held unconstitutional by this court, which found that "[w]hile some of the documents [were] displayed in their entirety, the defendants ha[d] excerpted a small portion of others to include only that document's reference to God or the Bible with little or no surrounding text." *ACLU of Ky. v. McCreary County*, 96 F.Supp.2d 679, 684 (E.D.Ky.2000).

2. Under the *Lemon* test, (1) the government action must have a secular purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) the action must not result in "excessive governmental entanglement with religion." *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105.

3. This court found that the display's history and composition evinced no secular purpose. Though the government's stated purpose is entitled to some deference, the court held that its task was to "examine the actual purpose of the use of the religious objects and ... not blindly accept an allegedly secular purpose which is contrary to the facts of the case." *McCreary County*, 96 F.Supp.2d at 687.

tion of each of the documents' historical and legal significance.[4]

After the hearing on this motion and resulting settlement negotiations, the McCreary and Pulaski County displays were again modified; the Scripture reference of "Exodus 20:3–17" and the phrase "King James Version" were eliminated from the Ten Commandments document. The Harlan County School Board display remains as it existed at the time of the hearing, but the school board has adopted a "Historical Document Placement Procedure" which implements its resolution for posting historical documents.

The plaintiffs, having asked this court to expand the preliminary injunction to include the current display,[5] must establish: (1) a strong or substantial likelihood of success on the merits; (2) that they will suffer irreparable harm in the absence of an injunction; (3) that others will not suffer substantial harm if the injunction is granted; and (4) that an injunction will serve the public interest. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998). Because the parties focus on the first of these elements and confine their arguments to the "purpose" and "effect" prongs of the *Lemon* test, the court will concentrate on these aspects of the issue. The court's analysis is governed by *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), and *Books v. City of Elkhart*, 235 F.3d 292 (7th Cir. 2000).[6]

## Analysis

As *Stone* and *Books* direct, the test used to determine the constitutionality of the current display is that set out in *Lemon v. Kurtzman, supra.* Therefore, we look for the display to have a secular purpose, for its principal or primary effect (as seen by the reasonably well-informed observer) neither to advance nor inhibit religion, and for a lack of excessive entanglement.[7]

4. The display in the Harlan County schools differed only in that it replaced the picture of Lady Justice with the text of Ky. Rev. St. § 158.195 (allowing posting of documents), the Ten Commandments document was a page from the Congressional Record declaring 1983 the year of the Bible (which contains a copy of the Ten Commandments), and that the explanation posted was in the form of a resolution of the Harlan County School Board.

5. Although the plaintiffs' motion actually challenged the third set of displays, this ruling encompasses both the third and fourth sets of displays.

6. *Stone* is the only U.S. Supreme Court case on point and *Books* is the only circuit-court case which directly confronts the instant issue and which has not been called into question. The court takes note of the Supreme Court's recent denial of certiorari in *Books*, which was marked by dissent. *See City of Elkhart v. Books*, —— U.S. ——, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001). Additionally, the court is aware that *Anderson v. Salt Lake*

*City Corporation*, 475 F.2d 29 (10th Cir.1973) (*cert. denied*, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973)), is a court-of-appeals case which reviewed the constitutionality of a Ten Commandments monument in light of the Establishment Clause; *Anderson*, however, predated *Stone*, and the Tenth Circuit has acknowledged that *Stone* undermines *Anderson's* continuing validity. *See Summum v. Callaghan*, 130 F.3d 906, 913 n. 8 (10th Cir.1997). While a number of other circuit-court cases involve challenges to Ten Commandments displays, they fail to address substantively the Establishment Clause issue. *See, e.g., DiLoreto v. Downey Unified School Dist. Bd. of Educ.*, 196 F.3d 958 (9th Cir. 1999) (*cert. denied*, 529 U.S. 1067, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000)); *Zichko v. Clegg*, 162 F.3d 1171 (9th Cir.1998) (*cert. denied*, 526 U.S. 1162, 119 S.Ct. 2055, 144 L.Ed.2d 221 (1999)) (unpublished); *Suhre v. Haywood County*, 131 F.3d 1083 (4th Cir. 1997); *Summum v. Callaghan*, 130 F.3d 906 (10th Cir.1997); *Freedom From Religion Foundation v. Zielke*, 845 F.2d 1463 (7th Cir. 1988).

*Purpose*

■ Although the Supreme Court typically gives deference, in religion cases, to the government's articulated purpose, where the Ten Commandments are at issue the Court has rejected the proffered purpose and found instead that the document is a sacred text which has a religious purpose. *See Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).[8] The government must dilute this religious purpose if a truly secular purpose can be said to exist. *See Books,* 235 F.3d at 303. This rejection of stated purpose has occurred even when secular symbols were used in conjunction with the Ten Commandments,[9] just as this court must reject the stated purpose even when the defendants place the Ten Commandments in a display with secular documents.

With regard to the current displays, the defendants have articulated a number of purportedly secular purposes. Their stated intentions include: (1) "[T]o erect a display containing the Ten Commandments that is constitutional"[10]; (2) "to demonstrate that the Ten Commandments were part of the foundation of American Law and Government"[11]; (3) "[to include the Ten Commandments] as part of the display for their significance in providing 'the moral background of the Declaration of Independence and the foundation of our legal tradition'"[12]; (4) "to educate the citizens of the county regarding some of the documents that played a significant role in the foundation of our system of law and government"[13]; and (5) [as stated by the Harlan County School Board] "to create a limited public forum on designated walls within the school district for the purpose of posting historical documents which played a significant role in the development, origins or foundations of American or Kentucky law...."[14] While these stated purposes are to be given some deference, "it is nonetheless the duty of the courts to 'distinguis[h] a sham secular purpose from a sincere one.'" *Santa Fe Ind. Sch. Dist. v. Doe,* 530 U.S. 290, 308, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (quoting *Wallace v. Jaffree,* 472 U.S. 38, 75, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring in judgment)). Our task is made easier by the fact that the first three of these purposes are, on their face, religious in nature and therefore im-

7. In recent jurisprudence, the latter two elements of the *Lemon* test, *see* note 2, *supra,* have been collapsed into the question of whether the display is viewed as government endorsement of religion. The "endorsement" test is treated as a refinement of *Lemon. See Lynch v. Donnelly,* 465 U.S. 668, 690, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring); *Granzeier v. Middleton,* 173 F.3d 568, 573 (6th Cir.1999); *Adland v. Russ,* 107 F.Supp.2d 782, 785 (E.D.Ky.2000).

8. While not an explicit rejection of such an articulation, the Supreme Court declined to grant certiorari in *Books,* — U.S. ——, 121 S.Ct. 2209, 149 L.Ed.2d 1039 (2001), where the Seventh Circuit had similarly rejected the city's stated purpose. *See Books,* 235 F.3d at 303–04 ("we hold that the City of Elkhart's avowed secular purpose of recognizing the historical and cultural significance of the Ten Commandments 'is not sufficient to avoid conflict with the First Amendment'" (quoting *Stone,* 449 U.S. at 41, 101 S.Ct. 192)).

9. *See Books,* 235 F.3d at 296 (monument included an "all-seeing eye" and an American eagle grasping the American flag).

10. Record No. 44, pp. 3, 4.

11. Record No. 44, p. 10.

12. Record No. 44, p. 15 (quoting the explanation of the Ten Commandments placed near the display).

13. Record No. 44, p. 13.

14. Record No. 56, exh. B.

permissible, while the history of the display belies the secular intentions of the other two.

Viewed facially, the first three of the defendants' stated "secular" purposes run afoul of the Supreme Court's holding in *Stone v. Graham*, because that case established that a state's desire to proclaim the Ten Commandments' foundational value for American law and government is a religious, rather than secular, purpose. In *Stone*, the Commonwealth of Kentucky sought to post the Ten Commandments along with the following notation: "The secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." *Stone*, 449 U.S. at 41, 101 S.Ct. 192. This putatively secular purpose, which is fundamentally the same as the defendants' first three articulated purposes, was rejected by the Court. The majority declared that "such an 'avowed' secular purpose is not sufficient to avoid conflict with the First Amendment. . . . The Ten Commandments are undeniably a sacred text in the Jewish and Christian

faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact." *Id.*[15]

■ The defendants' latter two articulated purposes, while facially secular in that they do not single out the Ten Commandments, crumble nonetheless upon an examination of the history of this litigation. "The Supreme Court has stressed the importance of the context of a clearly religious symbol in determining whether the purpose in displaying the symbol is religious or secular." *Books*, 235 F.3d at 303. To determine this context, the Seventh Circuit examined the history of the city's involvement in the monument's placement, from the initial dedication ceremony[16] to the city's adoption of a resolution in response to the then-pending litigation,[17] concluding that the city's purpose for displaying the monument was not secular. *See id.* at 304. In the present case, the history of these displays indicates that the defendants' overall purpose is religious in nature: to display the Ten Commandments. It is significant that the first displays, containing only the Ten Commandments, were erected in violation of the

---

15. It bears emphasis that this court is not commenting on the truth of the defendants' assertion of the Ten Commandments as a "foundational document." Like the Seventh Circuit, we recognize that "[t]he text of the Ten Commandments no doubt has played a role in the secular development of our society and can no doubt be presented by the government as playing such a role in our civic order." *Books*, 235 F.3d at 302 (noting the frieze on the wall of the U.S. Supreme Court, which depicts Moses holding the Ten Commandments, along with other religious and non-religious lawgivers).

16. The court found that the remarks of the speakers at the monument's dedication—a Catholic priest, a Jewish rabbi, and a Protestant minister—showed that "the purpose for displaying the monument was not only to provide youths with a common code of conduct to guide their participation in the civil

community but also to urge the people of Elkhart to embrace the specific religious code of conduct taught in the Ten Commandments." *Books*, 235 F.3d at 303. Thus, the circumstances accompanying the monument's display emphasized the "inherently religious nature of the Ten Commandments." *Id.*

17. In a manner similar to that of the instant defendants, the *Books* resolution characterized the monument and its symbols as acknowledging the Ten Commandments' historical and cultural significance, specifically the Commandments' effect on "the development of the fundamental legal principles of Western Civilization." *See Books*, 235 F.3d at 297. The court, however, looking to precedent, concluded that the resolution "ought to be accorded no more weight than the avowed secular legislative purpose articulated by the Kentucky legislature in *Stone*." *Id.* at 304.

Supreme Court's clear ruling in *Stone*.[18] This defiance imprinted the defendants' purpose, from the beginning, with an unconstitutional taint observed not only by this court, but by anyone acquainted with this litigation.[19] The second set of displays (the subject of this court's previous ruling) accentuated the defendants' religious purpose, rather than diminishing it, by posting the Commandments along with "specific references to Christianity and texts that, while promulgated by the federal government, were chosen solely for their religious references." *ACLU of Ky. v. Pulaski County*, 96 F.Supp.2d 691, 699 (E.D.Ky. 2000).

In their third and fourth attempts, the defendants have posted the Ten Commandments alongside the full text of various historical documents, purporting to educate the citizens of McCreary and Pulaski Counties and the schoolchildren of Harlan County regarding the history of this nation's law and government. It is this court's function to determine " 'whether the government's *actual* purpose is to endorse or disapprove of religion,' " *Books*, 235 F.3d at 302 (quoting *Edwards v. Aguillard*, 482 U.S. 578, 585, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (emphasis added)), a function we undertake by evaluating the totality of the circumstances. *See id.* In light of the history of the government's involvement in these displays, the defendants' purpose is clear. This purpose—posting the Ten Commandments—is improper and violative of the Establishment Clause "because it sends the ancillary message to … nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.' " *Id.* at 309–10 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 688, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). Thus, the defendants' fourth and fifth articulated purposes do not fundamentally differ from their first three,

**18.** The *Stone* court did not hinge its ruling upon the mandatory nature of the statute requiring schools to post the Ten Commandments; rather, it emphasized the message sent by the posting of a lone religious text, noting that "[t]his is not a case in which the Ten Commandments are integrated into the school curriculum …." *Stone*, 449 U.S. at 42, 101 S.Ct. 192.

**19.** This case is distinguishable from the situation in *ACLU of New Jersey v. Schundler*, 168 F.3d 92 (3rd Cir.1999), where the Third Circuit rejected the argument that the government's initial holiday display and subsequent modifications could be regarded as evidence of the official's bad faith because

the Supreme Court's decisions regarding holiday displays have been marked by fine line-drawing, and therefore it is not easy to determine whether particular displays satisfy the Court's standards. Under these circumstances, the mere fact that city officials miscalculate and approve a display that is found by the federal courts to cross over the line is hardly proof of the officials' bad faith. Although the original Jersey City display was ultimately struck down, no Supreme Court or Third Circuit precedent clearly established that it was unconstitutional until the prior panel handed down its decision, and therefore the city officials' decision to erect that display, which had been put up for decades, can hardly be viewed as evidence of an intent to flout the Establishment Clause.

*Id.* at 105 (footnotes omitted). In contrast, Supreme Court precedent regarding the posting of the Ten Commandments—*Stone v. Graham*—has not been marked by "fine line-drawing," nor was the counties' initial Ten Commandments display the product of "miscalculation." The initial display was in blatant disregard of a long-standing Supreme Court opinion clearly establishing its unconstitutionality. That fact, coupled with the even more overtly religious second display, in which the defendants selected only religious portions from historical American documents, lends credence to this court's determination of the defendants' religious purpose in this case.

and do not suffice to show that the government is motivated by a secular purpose in posting the current displays. Accordingly, the current displays fail the first prong of the *Lemon* test, in that they lack a secular purpose.

*Effect*

■ While failure of any prong of *Lemon* results in an Establishment Clause violation, this court will complete its analysis by considering the effect of the current displays. The second prong of *Lemon* is met when a government action's "principal or primary effect ... neither advances nor inhibits religion." *Lemon*, 403 U.S. at 612, 91 S.Ct. 2105. The "effect" prong has more recently been articulated as the endorsement test, which "prohibits speech that a reasonable observer would think is an endorsement of religion by the government." *Granzeier v. Middleton*, 173 F.3d 568, 573 (6th Cir.1999); *see also* note 7, *supra*. To make this determination, the court must look at the "totality of the circumstances surrounding the display." *Books*, 235 F.3d at 304. Moreover, the "reasonable observer" is considered to be one who is "familiar with the history and placement" of the display, rather than one

who sees it with no prior knowledge.[20] In the case at bar, the composition, setting, and history of the current displays would lead a reasonable observer to interpret them as the county governments' endorsement of religion.

The composition of the current set of displays accentuates the religious nature of the Ten Commandments by placing them alongside American[21] historical documents. Given the religious nature of this document,[22] placing it among these patriotic and political documents, with no other religious symbols or moral codes of any kind, imbues it with a national significance constituting endorsement. The Ten Commandments are completely different from the remainder of the displays. The reasonable observer will see one religious code placed alongside eight political or patriotic documents, and will understand that the counties promote that one religious code as being on a par with our nation's most cherished secular symbols and documents. This is endorsement. The Seventh Circuit has adopted similar reasoning; when considering the effect of a Ten Commandments monument, the *Books* court found that "the placement of the American Eagle gripping the national colors at the

---

**20.** *Books,* 235 F.3d at 306. *See also Santa Fe Ind. Sch. Dist.,* 530 U.S. at 308, 120 S.Ct. 2266 ("In cases involving state participation in a religious activity, one of the relevant questions is 'whether an objective observer, acquainted with the text, legislative history, and implementation of the statute, would perceive it as a state endorsement of prayer in public schools.' ") (quoting *Wallace v. Jaffree,* 472 U.S. 38, 73, 76, 105 S.Ct. 2479, 86 L.Ed.2d 29 (O'Connor, concurring in judgment)).

**21.** The Magna Carta and the picture of Lady Justice are the exceptions here, the only documents (besides the Ten Commandments) which are not unique to American history. Their inclusion, however, does not sufficiently broaden the display to encompass "world history" or to make it a survey of various civili-

zations' legal codes, so as to dilute the uniquely religious message of the Ten Commandments.

**22.** *Stone* recognized that:

The Ten Commandments are undeniable a sacred text in the Jewish and Christian faiths .... [which] do not confine themselves to arguably secular matters, such as honoring one's parents, killing or murder, adultery, stealing, false witness, and covetousness. Rather, the first part of the Commandments concerns the religious duties of believers: worshipping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day.

*Stone,* 449 U.S. at 41–42, 101 S.Ct. 192 (citations omitted).

top of the monument hardly detracts from the message of endorsement; rather, it specifically links religion . . . and civil government." *Books*, 235 F.3d at 307. The counties have not, despite their avowed efforts, erected the type of "appropriate educational display" which might "try to include all the various moral, historical, and political influences on our legal system' such as the Code of Hammurabi, the Code of Justinian, and passages from early English cases." *Harvey v. Cobb County*, 811 F.Supp. 669, 678 (N.D.Ga.1993). Instead, the current set of displays conveys the counties' comment on the Ten Commandments' (and consequently, religion's) foundational value to our shared history as citizens; a reasonable person would perceive this message as endorsement.

Furthermore, the setting of these displays—in the McCreary and Pulaski County courthouses and in the Harlan County public schools—has the effect of advancing religion. The courthouse displays are posted at the seat of government, which " 'is so plainly under government ownership and control' that every display on its property is marked implicitly with government approval." *Books*, 235 F.3d at 306 (quoting *American Jewish Congress v. City of Chicago*, 827 F.2d 120, 128 (7th Cir.1987)).[23] *Stone* confirms that this observation extends to the public school setting.[24] Like the monument in *Books*, the current set of displays conveys a message

of endorsement, despite the inclusion of secular documents and symbols. The fact that this religious message is exhibited within public places of great importance, such as the seat of government and the public schools, heightens the effect of advancing religion and the consequent violation of the Establishment Clause.

Finally, the history of these displays bolsters the reasonable observer's perception of the state endorsement of religion. The reasonable observer viewing these displays would know of the defendants' previous attempts to post the Ten Commandments alone and surrounded by religious excerpts from historical documents. Even without this specific knowledge, a reasonable observer must be charged with knowing something of the controversy surrounding these displays, which has focused on only one of the nine framed documents: the Ten Commandments. The defendants' non-secular purpose would be known to such a viewer and would increase the displays' religious effect by conveying the message that the counties had succeeded *not* in posting a display of "The Foundations of American Law and Government," but in posting the Ten Commandments. Thus, these displays likewise fail the "effect" prong of the *Lemon* test.

### Conclusion

The Supreme Court has recognized two constitutionally permissible uses of the

---

**23.** The court also noted that:

> In fulfilling our responsibility to apply faithfully the Establishment Clause jurisprudence of the Supreme Court of the United States, we have subjected to particularly careful scrutiny displays at the seat of government. We have taken this course because "[a]n important concern of the effects test is . . . 'whether the symbolic union of church and state effected by the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by

the nonadherents as a disapproval, or their individual religious choices.' "
*Books*, 235 F.3d at 305 (quoting *American Jewish Congress*, 827 F.2d at 127).

**24.** "If the posted copies of the Ten Commandments are to have any effect at all, it will be to induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments. However desirable this might be as a matter of private devotion, it is not a permissible state objective under the Establishment Clause." *Stone*, 449 U.S. at 42, 101 S.Ct. 192.

Ten Commandments within the public arena. The first is where "the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like." *Stone*, 449 U.S. at 42, 101 S.Ct. 192 (citing *Sch. Dist. of Abington v. Schempp*, 374 U.S. 203, 225, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)). The second is in a display incorporating both religious and secular figures, "signal[ing] respect not for great proselytizers but for great lawgivers," [25] such as the frieze on the wall of the United States Supreme Court.[26] The first use of the Ten Commandments has a teaching function and was suggested in a case involving a school,[27] while the second use has a legal-historical function and appears in a courtroom rather than a schoolhouse. Thus, these defendants have been given clear guidance by the United States Supreme Court for use of the Ten Commandments in their own venues.

At any rate, the current displays are clearly outside the bounds of these permissible uses and are violative of the Establishment Clause. Thus, the defendants have shown a strong or substantial likelihood of success on the merits. As the facts and analysis of the remaining three elements required for a preliminary injunction remains the same here as in our previous opinions in this case,[28] those elements are met and the injunction will be extended. Accordingly,

**IT IS ORDERED** that the plaintiff's motion to extend the preliminary injunction to the current displays is **GRANTED**.

**IT IS FURTHER ORDERED** that the displays shall be removed from the McCreary and Pulaski County courthouses and from the Harlan County schools **IMMEDIATELY**.

**IT IS FURTHER ORDERED** that the parties shall submit joint written status reports no later than July 23, 2001, advising the court whether they wish this order to be the final judgment in this case.

---

**25.** *County of Allegheny v. ACLU*, 492 U.S. 573, 652–53, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Stevens, J., concurring in part and dissenting in part).

**26.** The frieze on the south wall of the Court depicts Moses holding the Ten Commandments, along with Menes, Hammurabi, Solomon, Lycurgus, Solon, Draco, Confucius, Octavian, and the allegorical figures of Fame, Authority, Light of Wisdom, and History. The frieze on the north wall includes Justinian, Muhammad, Charlemagne, King John, Louis IX, Hugo Grotius, Sir William Blackstone, John Marshall, Napoleon, and the allegorical figures of Liberty and Peace, Right of Man, Equity, and Philosophy. There are also friezes on the east and west walls.

**27.** *See Stone*, 449 U.S. at 42, 101 S.Ct. 192.

**28.** *See, e.g., McCreary County*, 96 F.Supp.2d at 690–91.