Charles (Bo) **TURNER** and Gregg Holder, Plaintiffs,

v.

**HABERSHAM COUNTY, GEORGIA,** Defendant.

**Civil Action No. 2:02–CV–39–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Nov. 17, 2003.

Ralph S. Goldberg, Office of Ralph S. Goldberg, Frank L. Derrickson, Office of Frank L. Derrickson, Decatur, GA, Gerald R. Weber, Robert Lo–Pei Tsai, American Civil Liberties Union, Foundation of Georgia, Inc., Atlanta, GA, for plaintiffs.

Cadman Robb Kiker, Adams Ellard & Frankum, Clarkesville, GA, Douglas W. McDonald, Sr., McDonald & Cody, Cornelia, GA, Donald Andrew Cronin, Jr., O'Quinn & Cronin, McDonough, GA, Mathew D. Staver, phv, Liberty Counsel, Longwood, FL, for defendants.

### *OPINION*

O'KELLEY, Senior District Judge.

The Ten Commandments constitute the holy law as delivered by God to Moses at Mount Sinai and express tenants central to Jewish and Christian faiths. Many of those who have devoted their professional lives to the study of legal history believe that those same Ten Commandments were also central to the formation of many secular legal systems. Prominent church-state commentator and Senior Ninth Circuit Judge John T. Noonan, Jr. believes they represent "the most influential law code in history." John T. Noonan, Jr., *The Believer and the Powers That Are* 4 (Macmillan 1987). This lawsuit concerns the extent to which the Ten Commandments can be displayed in public buildings without running afoul of the First Amendment to the United States Constitution. Based on the evidence presented during a one-day bench trial, the court holds that Habersham County's display of the Ten Commandments violates the Establishment Clause.

## I. Findings of Fact

Plaintiffs Charles "Bo" Turner and Gregg Holder originally brought suit against Habersham County, Georgia ("the county") and Dewey Tench, individually and in his official capacity as Chairman of the Habersham County Board of Commissioners ("the board"). Plaintiffs challenged the county's decision to publicly display the Ten Commandments at the Habersham County courthouse ("the courthouse") and the Habersham County natatorium ("the natatorium"). Plaintiffs subsequently amended their complaint to add Habersham County Sheriff Rick Moore as a defendant after the Ten Commandments were posted on the wall of the Habersham County jail ("the jail"). By the time this case was ready for trial, plaintiffs had dismissed their claims against defendants Tench and Moore. Furthermore, the parties agreed that the Ten Commandments had been removed from the jail, which was under the jurisdiction of Sheriff Moore. Accordingly, the trial proceeded solely as to the county defendant and concerned only the displays at the courthouse and natatorium.

Plaintiff Charles "Bo" Turner is a citizen of Habersham County, Georgia and an ordained Baptist minister. He testified that he has previously visited the courthouse to pay his real estate taxes and car tag fees. He recounted that he takes his grandchildren to the natatorium. Plaintiff Gregg Holder is a self-defined atheist, a resident of Habersham County, and an employee of the City of Demorest fire department. He testified that he has responded to the courthouse as an employee of the fire department and has been there for county commission meetings. Holder also stated that he has visited the natatorium for fire training classes and for organizational meetings.

The course of events giving rise to this litigation began on May 7, 2001 when Mr. R.W. Moore, a resident of Stephens County, Georgia, petitioned the board to adopt the following resolution:

WE, THE BELOW–SIGNED SETTING [sic] COMMISSION OF HABERSHAM COUNTY, IN CONSIDERATION OF OUR BIBLICAL HISTORY OF GEORGIA, BOTH IN OUR CONSTITUTION AND DEVOTIONAL ACTS IN OUR HERITAGE, HEREBY ACKNOWLEDGE THE IMPORTANCE OF THE TEN COMMANDMENTS OF ALMIGHTY GOD AND WISH TO GO ON RECORD IN SUPPORT OF THIS MAGNIFICENT DOCUMENT AND STATE THAT WE WILL DEFEND OUR RIGHT TO DISPLAY TO THE LIMIT OF OUR ABILITY, AGAINST ALL ENEMIES, DOMESTIC AND FOREIGN, PUBLIC AND PRIVATE.

IN THE ENACTING OF THIS RESOLUTION, WE HEREBY PETITION THE GOD OF HEAVEN TO PRESERVE THE PEACE WHICH HE HAS SO GRACIOUSLY EXTENDED TO U.S. BY OUR ANCIENT ACKNOWLEDGMENT OF THE TEN COMMANDMENTS AND BEG HIS CONTINUED PROTECTION AND ALLEVIATION OF ILLS WHICH COME TO THOSE WHO FORGET HIM AND HIS LAW.

In his presentation to the board, Mr. Moore noted that he was "on a mission to restore God back into our governments" and urged the board to be "leaders in God's work." Mr. Fish, a member of the board, indicated his agreement with Mr. Moore's sentiments and made a motion to accept the resolution, which was adopted unanimously.

In accordance with the resolution, the county posted copies of the Ten Commandments at the courthouse and at the natato-

rium. The displays consisted of the King James version of the Ten Commandments from Exodus chapter 20, verses three through seventeen, and appeared as follows:

### THE TEN COMMANDMENTS

Thou shalt have no other gods before me.

Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water underneath the earth: Thou shalt not bow down thyself to them, nor serve them: for I the LORD thy God am a jealous God, visiting the iniquity of the fathers upon the children unto the third and fourth generation of them that hate me.

Thou shalt not take the name of the LORD thy God in vain: for the LORD will not hold him guiltless that taketh his name in vain.

Remember the sabbath day, to keep it holy.

Honour thy father and thy mother: that thy days may be long upon the land which the LORD thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against they neighbour.

Thou shalt not covet thy neighbour's house, thou shalt not covet thy neighbour's wife, nor his manservant, nor his maidservant, nor his ox, nor his ass, nor any thing that is thy neighbour's.

Although the parties did not provide an exact date on which the Ten Commandments were actually placed in the courthouse and at the natatorium, the court has no reason to believe there was any significant delay between when the resolution was passed and when the documents were displayed. Furthermore, it is clear that the county did not use any of its own funds to purchase the copies of the Ten Commandments, and the parties have not identified any significant maintenance costs.

On March 27, 2002, plaintiffs initiated this lawsuit. At a meeting on August 5, 2002, the board adopted a resolution accepting a private donation of historically significant documents, including the Declaration of Independence, the Mayflower Compact, the Bill of Rights to the United States Constitution, the Magna Carta, the National Anthem, and Lady Justice. The resolution was signed and became effective on October 7, 2002. After listing the donated documents, the resolution went on to provide in pertinent part that:

> **WHEREAS,** the Habersham County Board of Commissioners believes that the display of those documents and symbols in the courthouse and the natatorium in conjunction with the already posted Ten Commandment displays, and in other county offices and buildings, will culturally enrich the citizens of this county due to the special historical significance of these documents and symbols to our county and our country. More specifically, the above-cited displays will create a sense of historical context, civic duty and responsibility, will foster a general appreciation and understanding of the law of this land, and will instill qualities desirable of the citizens of this county; and

**WHEREAS,** the Habersham County Board of Commissioners believes that the display of historically significant documents and symbols is particularly appropriate and important in light of the attacks against this country on September 11, 2001; . . .

**BE IT[ ] RESOLVED,** that the historically significant documents and symbols be posted at the courthouse, the natato-

rium and other county offices and buildings.

The historical documents accepted in the second resolution were posted in the natatorium, along with the previously displayed copy of the Ten Commandments. That collection consists of seven framed documents, each in close proximity to the others. The courthouse display includes the above-listed documents from the second resolution, absent the Mayflower Compact, and the previously posted copy of the Ten Commandments. In the courthouse collection, the documents are placed in a straight line along one wall in front of the main entrance to the building. Plaintiffs protested the fact that the Ten Commandments were larger and employed different font size and color than the other documents. The county replaced the previously displayed copies of the Ten Commandments with ones that matched the other documents in size and appearance.

## II. Conclusions of Law

### A. Standing

■ Although the issue was not directly raised by defendant, the court will briefly discuss plaintiffs' standing to bring this lawsuit. Under Article III of the United States Constitution, federal courts may resolve only actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To satisfy the "case" or "controversy" requirement, a plaintiff must demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision from the court. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Both plaintiffs in this case demonstrated that they have been forced to encounter the offensive displays. Plaintiff Turner used the courthouse to pay taxes and car registration fees and visited the natatorium with his grandchildren.

Plaintiff Holder responded to emergency calls at the courthouse and attended training classes and organizational meetings at the natatorium. Counsel for the defendant brought out that plaintiffs could have avoided their alleged injuries had they chosen to do so; they could have accessed the buildings through back entrances or sent in car registration fees through the mail. Although the defendant did not explicitly make this argument in its written brief, the court found the implications of the questioning at trial quite distasteful. One would hope this country has progressed well beyond the point where any minority segment of our society is forced to use back door entrances to government buildings simply to accommodate the beliefs of the majority.

Had plaintiffs altered their course of conduct because of the religious displays, they certainly would have had standing to challenge the county's actions. *See Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir.2003). However, they were not required to do so. As the Seventh Circuit held in *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir.2000), "a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located." *Id. See also Harvey v. Cobb County*, 811 F.Supp. 669, 675 (N.D.Ga.1993) (Shoob, J.) (plaintiff not required to avoid the offending display to have standing). Both plaintiffs had a right to attend both government buildings without being subjected to the allegedly offensive displays. Accordingly, the court finds that both plaintiffs have suffered an injury sufficient to satisfy the "injury in fact" requirement. It is likewise clear that those injuries are a direct result of the county's actions and that the court can provide sufficient redress. Both plaintiffs have demonstrated standing to bring this action. *See Books*, 235 F.3d at 300–01

(standing exists where plaintiffs were forced to come into contact with offensive display in order to fully participate in government); *ACLU of Tenn. v. Hamilton County*, 202 F.Supp.2d 757, 761–62 (E.D.Tenn.2002) (standing exists for those who have to visit a courthouse displaying the Ten Commandments to pay property taxes and car registration fees); *ACLU v. Pulaski County*, 96 F.Supp.2d 691, 694 (E.D.Ky.2000) (standing exists for those who must visit a courthouse displaying the Ten Commandments to conduct "civic business").

### B. Mootness

■ Defendant next contends that plaintiffs' challenge has been rendered moot by the display of the additional historical documents. In essence, defendant argues that plaintiffs challenged only the lone display of the Ten Commandments and that because the county added the other historical documents, any constitutional violation that may have occurred as a result of the first display has been cured. Defendant relies largely on the Eleventh Circuit's decision in *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998). An analysis of that case shows why defendant's argument misses the mark.

In *Jews for Jesus*, plaintiffs were prevented from distributing religious literature at the Tampa International Airport. *Id.* at 628. They brought suit, seeking to have airport officials enjoined from enforcing the allegedly unconstitutional regulations. *Id.* at 629. Approximately one month after plaintiffs initiated the suit, the defendant lifted its prohibition on the distribution of literature, thereby enabling representatives from Jews for Jesus to hand out their pamphlets. *Id.* The court found that the defendant's change of policy gave the plaintiffs exactly what they were

seeking—the right to distribute literature at the airport. *Id.* Accordingly, there was nothing for the court to resolve. *Id.* In the case at bar, defendant has not removed the allegedly unconstitutional copies of the Ten Commandments. Although the county has added displays of secular documents, it has not taken down the copies of the Ten Commandments or repealed the resolution the board adopted when it decided to hang the Ten Commandments. The federal reports are replete with cases that have found displays of the Ten Commandments unconstitutional, even when presented as one element of a larger, more secular exhibit. *See Adland v. Russ*, 307 F.3d 471 (6th Cir.2002); *Books v. City of Elkhart*, 235 F.3d 292 (7th Cir.2000); *ACLU of Ohio Found., Inc. v. Ashbrook*, 211 F.Supp.2d 873 (N.D.Ohio 2002). *See also Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766 (7th Cir.2001) (affirming grant of preliminary injunction); *ACLU of Tenn., Inc. v. Rutherford County*, 209 F.Supp.2d 799 (M.D.Tenn.2002) (granting preliminary injunction); *ACLU of Kentucky v. McCreary County*, 145 F.Supp.2d 845 (E.D.Ky.2001) (same); *ACLU of Kentucky v. Pulaski County*, 96 F.Supp.2d 691 (E.D.Ky.2000) (same). The mere fact that additional secular displays were added to the Ten Commandments displays does not automatically render the latter constitutional. Plaintiffs complain that defendant unconstitutionally placed copies of the Ten Commandments on the walls of the courthouse and the natatorium. Because those documents are still on display, this case is not moot.

### C. First Amendment Challenge

■ The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." [1]

---

**1.** The religion clauses of the First Amendment apply to all laws, not just those enacted by

U.S. Const. amend. I. "Perhaps in the early days of the Republic these words were understood to protect only the diversity within Christianity, but today they are recognized as guaranteeing religious liberty and equality to 'the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism.'" *County of Allegheny v. ACLU*, 492 U.S. 573, 589–90, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), *quoting Wallace v. Jaffree*, 472 U.S. 38, 52, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). When evaluating a challenge under the Establishment Clause, the Eleventh Circuit continues to apply the three-part test laid out in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2125, 29 L.Ed.2d 745 (1971). *Glassroth*, 335 F.3d at 1295.[2] Under *Lemon*, the challenged action must have a valid secular purpose, not have the effect of advancing or inhibiting religion, and not foster excessive government entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105.

### 1. Purpose

■ "Under the *Lemon* analysis, a statute or practice which touches upon religion, if it is to be permissible under the Establishment Clause, must have a secular purpose...." *County of Allegheny*, 492 U.S. at 592, 109 S.Ct. 3086. A court should strike down a display because of an unconstitutional legislative purpose only after "it has concluded there was no ques-tion that the statute or activity was motivated wholly by religious considerations." *Lynch v. Donnelly*, 465 U.S. 668, 680, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). "When a governmental entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference. But it is nonetheless the duty of the courts to 'distinguish a sham secular purpose from a sincere one.'" *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (citation omitted).

■ In the context of the Ten Commandments, any avowed secular purpose articulated by the government must be examined in light of the Supreme Court's clear holding that "[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact." *Stone v. Graham*, 449 U.S. 39, 41, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (footnote omitted). This strong language has led some courts to conclude that the Ten Commandments cannot be constitutionally displayed by themselves. *See Books*, 235 F.3d at 302 ("[W]e do not think it can be said that the Ten Commandments, standing by themselves, can be stripped of their religious, indeed sacred, significance and characterized as a moral or ethical document.").[3] The court is obviously aware of the fact

---

Congress. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (holding that the Establishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment).

**2.** The *Lemon* test has been frequently criticized. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. District*, 508 U.S. 384, 398, 113 S.Ct. 2141, 124 L.Ed.2d 352 (Scalia, J., concurring) ("Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried, *Lemon* stalks our Establishment Clause jurisprudence once again...."). Nevertheless, as the *Lamb's Chapel* majority noted, "*Lemon*, however frightening it might be to some, has not been overruled." *Id.* at 395 n. 7, 113 S.Ct. 2141.

**3.** The Eleventh Circuit's decision in *King v. Richmond County*, 331 F.3d 1271 (11th Cir. 2003), is not to the contrary. In *King*, the court upheld the use of an outline of the Ten Commandments on a county seal. Significantly, the actual text of the Commandments was not displayed; only the Roman numerals appeared on the picture. *Id.* at 1285–86.

that the display in this case now contains other, more secular documents. However, the skepticism with which courts view lone displays of the Ten Commandments, and perhaps their per se unconstitutionality, is relevant given that the initial presentation put forth by the county consisted of only the Ten Commandments. *McCreary County*, 145 F.Supp.2d at 849–50 (an original display of only the Ten Commandments, erected in violation of the Supreme Court's clear holding in *Stone*, imprinted the defendants' purpose with an unconstitutional taint). This skepticism is well grounded when one considers that at least the first four commandments, and arguably the first five, are exclusively religious in nature.

This case would have presented entirely different issues had the county left the displays as originally presented with only the copies of the Ten Commandments. However, the county added displays of secular documents, ostensibly to "foster a general appreciation and understanding of the law of this land." The question then becomes whether the addition of the secular documents serves to supersede the unconstitutional purpose involved with the initial display. For the following reasons, the court finds it does not.

As a starting point, the court notes the clarity with which the board articulated its purpose associated with the initial, lone display of the Ten Commandments. The board stated that "we hereby petition the God of heaven to preserve the peace which he has so graciously extended to us by our ancient acknowledgment of the Ten commandments and beg His continued protection and alleviation of ills which come to those who forget Him and His law." If nothing else, the board made it very clear why it was doing what it did. It did not leave the record murky or attempt to hide behind a sham secular purpose. Unfortunately for defendant, because there is not even the hint of a secular reason for the initial display, the lone display of the Ten Commandments was blatantly unconstitutional. *See ACLU of Tenn., Inc. v. Rutherford County*, 209 F.Supp.2d 799, 806 (M.D.Tenn.2002) (construing nearly identical language and holding that no secular purpose was discernible from the face of the resolution).

Defendant contends that it should not be bound by its initial purpose. It argues that it should be able to "correct" what might have originally been an unconstitutional display. While the court wholeheartedly agrees with that proposition of law, defendant did not do so in this case. A review of the second resolution, accepting the gift of the secular documents, illustrates this point. The second resolution, passed in an apparent attempt to "correct" the first, does nothing to disturb the validity of its predecessor. It does not repeal the first resolution, does not recognize the error of the first display, nor do anything to indicate that the board had in some way changed its position as articulated in the first resolution. In fact, the second resolution treats the displays of the Ten Commandments and the displays of the secular documents as separate presentations. The board noted that "the display of [the secular documents] and symbols in the courthouse and the natatorium in conjunction with the already posted Ten Commandments displays ... will culturally enrich the citizens of this county."

The testimony from the county commissioners who testified at trial supports the inference that the second resolution did nothing to displace the purpose articulated in the first. Commissioner Popham, who voted in favor of both resolutions, indicated that he voted for the second resolution on the advice of counsel and has no idea who chose the secular documents or why those particular papers were selected.

When questioned about the individual documents, Commissioner Popham admitted he did not know what the Magna Carta was nor whether it was a document of American origin. Commissioner Fish, who also voted in favor of both resolutions, was unable to identify a secular purpose for any of the first four Commandments, each of which seems to convey a uniquely religious message.

The facts of the *Rutherford County* case are nearly identical to those of the case at bar, and that court's analysis is both instructive and well-reasoned. The Rutherford County board of commissioners passed a resolution nearly identical to the first resolution at issue in this case. *Id.* at 801–02. It later added other historical documents, claiming a desire to further the education of the county's residents. *Id.* at 803. The court found that the county had done nothing to retreat from the unambiguous religious purpose articulated in the first resolution, despite other resolutions espousing more secular considerations. *Id.* at 807. The *Rutherford County* court held that the county's true purpose was religious even after it repealed the initial resolution. *Id.* at 808. While this court makes no findings on how it would have ruled if the board in this case had done likewise, it is worth noting to show how much of an effect such a blatantly religious resolution can have on future actions.

The court also finds the board's timing relevant to the purpose analysis. The secular displays were not added until after this action was initiated. As the Sixth Circuit noted, addition of other documents after litigation has begun tends to show that those documents are "an afterthought, at best, secondary in importance to the Ten Commandments." *Adland,* 307 F.3d at 481. *See also Rutherford County,* 209 F.Supp.2d at 808 (remedial action taken subsequent to filing of a lawsuit viewed with skepticism). The court does not place the defendant in a no-win situation: lose if the Ten Commandments are displayed by themselves and lose if other secular documents are added after litigation. Rather, it simply places defendant in a situation where once it has articulated an unconstitutional motive, it must take affirmative steps to purge that motive.

Because the first resolution remains and because the board has done nothing to weaken the stance it articulated with the first resolution, the court is left with a Ten Commandments display with a stated religious purpose. Such a display is inconsistent with the First Amendment Establishment Clause, even when the display includes more than just the Ten Commandments. *Adland,* 307 F.3d at 484; *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 771–72 (7th Cir.2001) (affirming grant of preliminary injunction); *Rutherford County,* 209 F.Supp.2d at 807–09 (granting preliminary injunction); *ACLU of Kentucky v. McCreary County,* 145 F.Supp.2d 845, 848–51 (E.D.Ky.2001) (granting preliminary injunction). The court finds that the board's purpose in hanging the Ten Commandments was entirely religious in nature and because the board did nothing to cast doubt on that originally-stated purpose, the display of the Ten Commandments violates the Establishment Clause.

### 2. Effect

 While failure of any prong of *Lemon* results in an Establishment Clause violation, the court will complete its analysis by examining the effect of the displays. The effects prong of the *Lemon* test asks whether "observers would reasonably believe that the government's use of a predominantly religious symbol sends a message of governmental endorsement of religion." *King v. Richmond County,* 331 F.3d 1271, 1282 (11th Cir.2003). The

court must look at the entire display and evaluate the religious symbol based on the context in which it is presented. *Id.* The presentation will violate the Establishment Clause if " 'an objective observer, acquainted with the text, legislative history, and implementation' " of the enactment would view it as state endorsement of religion. *Santa Fe Indep. Sch. Dist.,* 530 U.S. at 308, 120 S.Ct. 2266 (citation omitted).

Defendant maintains that the secular documents were added to the display to culturally enrich the county's citizens, presumably about the role the selected documents have played in the history of this country and the foundation of its legal systems. However, a review of the entire context of this display simply does not support the defendant's position. The main problem with the display is that the county failed to include any explanation with the documents as to how they all fit together or why they were being presented as a group. The reasonable observer, even one somewhat familiar with each of the documents, is left to wonder why they are all hanging on the wall of the courthouse and the wall of the natatorium. Without any explanation as to why this one religious document is presented with a collection of clearly secular documents, a reasonable observer would be quite justified in concluding that defendant was endorsing either religion in general or Judeo Christian religions in particular. An explanation focusing on the secular aspects of the Ten Commandments and their role in the development of this and other legal systems, when properly incorporated into an otherwise constitutional display describ-

ing the other exhibits presented, might have left the reasonable observer believing that the county was not attempting to endorse religion in any sense.

The use of a titled theme and placards describing individual documents and their place in history appears to be somewhat common amongst those government entities that have elected to create such a display. *See, e.g., ACLU of Kentucky v.Mercer County,* 219 F.Supp.2d 777, 779 (E.D.Ky.2002); *Rutherford County,* 209 F.Supp.2d at 803–04; *McCreary County,* 145 F.Supp.2d at 846–47. While a display with such a titled theme and explanations would have to be reviewed in context to determine its constitutionality, the court finds that a display without those safeguards leaves the reasonable observer to conclude that the county is endorsing religion.[4] Defendant failed to provide a proper context for the display, thereby impermissibly endorsing religion and Judeo Christian religions in particular.

In this case, it is abundantly clear to the court that the purpose and effect of the displays render the presentations unconstitutional. Despite that clear holding, the court feels obliged to articulate exactly what it does not hold. The court does not hold that an identical display with an articulated neutral purpose and helpful explanations accompanying each document would have automatically passed constitutional muster. While those deficiencies were the downfall of the display in Habersham County, the presentation might well have been unconstitutional even with an entirely secular purpose and a coherent

---

4. The court notes that a failure to include any explanation of the historical significance of any of the documents provides further evidence that the board's proffered secular purpose should be disregarded. The second resolution states that the displays "will create a sense of historical context" and "will foster a general appreciation and understanding of the law of this land." However, stated intentions to the contrary, the board did nothing to actually explain the historical context or tell what effect the documents had on the history of the "law of this land."

statement explaining the relationship between the documents.

The "Ten Commandments" are in fact ten edicts if one chooses the King James version of the text. But, different religions have different versions of the commandments that vary in both number and substance. Plaintiffs' expert witness Jane Fahey, who is a pastor at the Trinity Presbyterian Church and received her Masters in Divinity from Columbia Theological Seminary in Decatur, Georgia, testified that the Jewish version of the Ten Commandments differs from the Catholic version, which in turn differs from the version used by other Christian faiths.[5] By choosing any one of those versions over another, a government entity is making a statement about the substance of the text it chooses. For example, Ms. Fahey testified that the text of the King James version reads "Thou shalt not kill." In contrast, the text of the Torah is typically translated as "You shall not murder." The difference between the two, while primarily limited to one word, is extraordinarily important. John T. Noonan, Jr., *The Believer and the Powers That Are* 4 (Macmillan 1987) ("Opinion also divides us as to whether the commandment is 'You shall not murder' or 'You shall not kill'—a difference with consequences for pacifism and other moral questions related to killing."). A prohibition against killing would seemingly preach against any death imposed upon another person, whereas a prohibition against murder is much more limited in scope. That difference implicates some of the most controversial social issues of the day, including war, abortion and capital punishment.

Furthermore, some courts have held that including the Ten Commandments with revered secular documents and symbols serves "to link government and reli-

gion in an impermissible fashion." *Adland*, 307 F.3d at 486–87. *See also O'Bannon*, 259 F.3d at 773; *ACLU of Ohio Found., Inc. v. Ashbrook*, 211 F.Supp.2d 873, 890–91 (N.D.Ohio 2002); *McCreary County*, 145 F.Supp.2d at 851. Those courts reasoned that by placing the Ten Commandments with a collection of non-religious, secular documents, the government was sending a message that the one religious document was on par with the non-religious documents.

As the court previously noted, none of these issues is directly germane to the case at bar because the display so clearly fails both the purpose and effects prongs of *Lemon*. The court simply notes that a display with one version of the Ten Commandments and other more secular documents would not automatically pass constitutional review. An analysis of the government's purpose and the effects the display would have on a reasonable observer would still be in order and would no doubt present serious questions that are not easily resolved. In the case at bar, because the first two *Lemon* prongs have been violated and because little evidence was presented as to the degree of entanglement between government and religion, the court will not analyze the third prong of *Lemon*.

This decision is in no way intended to be antagonistic towards religion in general or specifically towards those religions that have adopted the King James version of the Ten Commandments. To the contrary, this decision protects the freedom of followers of all religions and followers of no religion to be able to access government services without having their beliefs called into question. The United States was founded by those fleeing religious

---

**5.** While Ms. Fahey testified as to at least three different translations of the Bible including the Ten Commandments, the court recognizes that there are many other translations, even within Protestant Christianity.

persecution and remains a place where all are free to worship and believe as they choose. This court does nothing to call into question the moral value of the Ten Commandments; rather, it simply holds that Habersham County cannot be in the business of endorsing the religious messages contained therein. The residents and office holders of Habersham County remain free to acknowledge and worship God in the form and manner of their religious preference; the office holders are simply prohibited from adopting and establishing religious views on behalf of their constitutents.

### III. Conclusion

In conclusion, the court finds that defendant's display of the Ten Commandments violates the Establishment Clause of the First Amendment. Defendant has failed to retreat from the unambiguous religious purpose articulated when the first resolution was passed and has done nothing to indicate to the reasonable observer how the presented documents are historically related, thereby failing under both prongs one and two of the *Lemon* test. While there might be ways to constitutionally display the Ten Commandments as part of a larger, historical presentation, Habersham County has failed to do so in this case. Because the court finds that the display of the Ten Commandments violates the United States Constitution, there is no need to consider plaintiffs' contentions that the presentation also offends the Georgia Constitution. Judgment is hereby entered for the **PLAINTIFFS,** and defendant is **ORDERED** to immediately remove the copies of the Ten Commandments currently hanging in the courthouse and the natatorium. Pursuant to Federal Rule of Civil Procedure 65, the defendant and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby **EN-**

**JOINED** from continuing the presentation of the Ten Commandments as currently displayed in the Habersham County, Georgia courthouse and natatorium.