[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/07/98
THOMAS K. KAHN
CLERK

No. 96-2468

D. C. Docket No. 95-1347-CIV-T-17A


JEWS FOR JESUS, INC., and STEVE COHEN,
Individually,

                                                     Plaintiffs-Appellants,

versus

HILLSBOROUGH COUNTY AVIATION AUTHORITY,

                                                     Defendant-Appellee.


Appeals from the United States District Court
for the Middle District of Florida

**(December 7, 1998)**


Before HATCHETT, Chief Judge, and TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

This case arises out of a First Amendment challenge to literature distribution policies at the Tampa International Airport. The challenged policies were revoked during the pendency of this lawsuit, and the district court dismissed the case as moot. We affirm.

The plaintiff, Jews for Jesus, is a nonprofit Christian missionary organization.[1] One of the organization's main activities is the distribution of free literature in airports. In 1994, Jews for Jesus contacted the Tampa International Airport (which is operated by defendant Hillsborough County Aviation Authority) about distributing literature at the airport. Jews for Jesus was informed that the airport's policy regarding literature distribution was presently under review,[2] and that, pending completion of that review, literature distribution at the Tampa International Airport was completely prohibited. After discussions with various airport officials, Jews for Jesus brought this lawsuit in August 1995 seeking injunctive and declaratory relief that would permit the organization to distribute literature at the Tampa International Airport.[3]

Approximately one month after the commencement of the lawsuit, in September 1995, the airport lifted the prohibition on the distribution of literature. Since that time, individuals and

---

[1] Steve Cohen, Florida Branch Director of Jews for Jesus, is also a plaintiff in this suit.

[2] Tampa International Airport's literature distribution policy mandated that persons seeking to distribute literature in the airport must, inter alia, obtain permission from the director of airport operations, obtain $500,000 in personal injury and property damage insurance, and wear an official identification badge while on airport property. This policy was suspended in November 1986; it had therefore been "under review" for nine years at the time of Jews for Jesus' lawsuit.

[3] Jews for Jesus claimed a right to relief under the First Amendment's Free Speech, Free Exercise, and Peaceable Assembly Clauses, and under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1 (1994). The Religious Freedom Restoration Act of 1993 was subsequently held unconstitutional in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

organizations – including Jews for Jesus – have been freely permitted to distribute literature at the Tampa International Airport.  Jews for Jesus, however, maintains that the possibility of a return to the prior prohibition (or to the restrictive policy in place before the prohibition, see supra note 2) means that there was still a justiciable "case or controversy" before the district court, and thus it was error for the district court to dismiss the case as moot.  We review the district court's determination de novo.  See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 496 (11th Cir. 1996).

A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief.  See Pacific Ins. Co. v. General Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994).  In this case, the airport's change of policy has already given Jews for Jesus the relief they seek – the ability to distribute literature at the airport – and there is therefore no meaningful relief left for the court to give.  The only remaining issue is whether the airport's policy was constitutional – which, at this stage, is a purely academic point.  See Princeton Univ. v. Schmid, 455 U.S. 100, 102, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us.").

Jews for Jesus, however, correctly points out that the mere voluntary cessation of a challenged practice does not render a case moot.  See County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).  Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of a lawsuit, and then reinstate the practice as soon as the litigation was brought to a close.  Thus, voluntary cessation of a challenged practice renders a case moot only if there is no "reasonable expectation" that the

3

challenged practice will resume after the lawsuit is dismissed.  See id.; United States v. W.T.

Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); see also National Adver.

Co. v. City of Fort Lauderdale, 934 F.2d 283, 286 (11th Cir. 1991) (holding that the case was not

moot because there was a reasonable expectation that the challenged conduct would recur).  See

generally 13A Charles Alan Wright et al., Federal Practice and Procedure § 3533.5 (2d ed.

1984).

The district court found that there was no reasonable expectation that the Tampa

International Airport would return to its prior policy.  We agree.  The new "open door" policy

appears to have been the result of substantial deliberation on the part of airport officials, and the

evidence suggests that it has been consistently applied for the past three years.  Because there is

no reason to think that the airport will change its policy at the conclusion of this lawsuit, we

affirm the district court's dismissal of the suit as moot.[4]

We may, of course, be mistaken about the secret intentions of Tampa International

Airport's officials.  If they choose to reinstate their restrictive policies – or adopt similar ones –

the courthouse door is open to Jews for Jesus to reinstate its lawsuit.  Under such circumstances,

the case would not be moot even if the airport again revoked its policies in response to the

lawsuit, because such "flip-flopping" would create a reasonable expectation that the airport

would reinstate the challenged practice at the close of the lawsuit.

---

[4] Jews for Jesus also claims that the case is not moot under the "capable of repetition, yet evading review" doctrine.  That doctrine requires that "there was a reasonable expectation that the same complaining party would be subjected to the same action again."  Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975).  Therefore, our holding that there is no reasonable expectation that the conduct will recur also precludes application of the "capable of repetition, yet evading review" doctrine.

4

Jews for Jesus also claims that the time given it for discovery was too short – only 21 business days – and therefore there were not sufficient facts before the court to make a determination of whether the case should be dismissed.  All of the information sought by Jews for Jesus in its proposed discovery, however, related to past practices of the Tampa International Airport.  None of it related to whether the airport was likely to resume its challenged practices in the future.  Therefore, the alleged error in the discovery process does not affect our resolution of this appeal.

For the foregoing reasons, the judgment of the district court is AFFIRMED.