[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 8, 2004
THOMAS K. KAHN
CLERK**

No. 03-11305

D. C. Docket No. 00-00865-CV-CG-L

CHRISTIAN COALITION OF ALABAMA,

Plaintiff-Appellant,

versus

RANDALL L. COLE, in his official capacity
as Commissioner of the Alabama Judicial Inquiry
Commission,
NORMAN E. WALDROP, JR., in his official
capacity as a member of the Alabama Judicial
Inquiry Commission, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 8, 2004)**

Before CARNES and WILSON Circuit Judges, and HANCOCK[*], District Judge.

_____

[*] Honorable James H. Hancock, United States District Judge for the Northern District of Alabama, sitting by designation.

WILSON, Circuit Judge:

The Christian Coalition of Alabama ("CCA") appeals the district court's ruling that the CCA's case against the members of the Alabama Judicial Inquiry Commission ("JIC") is moot. We agree that this case is moot, and affirm the district court's order.

## BACKGROUND

On August 30, 2000, the CCA distributed a questionnaire to all Alabama judicial candidates whose names would appear on the November 7, 2000 general election ballot. The questionnaire originally consisted of thirty questions covering a number of social and political issues such as abortion, gun control, and the role of a judge's religious beliefs in decision making. Before answering the questionnaire, two sitting judges (neither is a plaintiff in this action) who were running for re-election in the 2000 general election sought an opinion from the JIC about the propriety of answering the CCA questionnaire. The JIC is vested by the Alabama Constitution with authority to enforce the Canons of Judicial Ethics ("Canons") against Alabama judges. On September 8, 2000, the JIC issued Advisory Opinion 00-763 ("Advisory Opinion"), in which the JIC stated that if the judges answered some of the questions, they would violate specific Canons. The CCA responded by reducing the number of questions to fifteen. And on

2

September 26, 2000 the CCA, along with three candidates on the November 2000 ballot for Alabama judicial office, instituted this suit seeking declaratory and injunctive relief in federal district court.

On October 10, 2000, the district court enjoined the JIC from enforcing its Advisory Opinion, but it did not reach the merits. Rather, the district court abstained and stated that the state courts provided the more appropriate forum to resolve the First Amendment challenge to the Canons. *See Pittman v. Cole*, 117 F.Supp. 2d 1285, 1314 (S.D. Ala. 2000).

On appeal, we vacated and remanded with instructions that the district court certify any state law questions which are outcome determinative to the Alabama Supreme Court. *See Pittman v. Cole*, 267 F.3d 1269, 1291 (11th Cir. 2001). We stated that once the state law questions were answered by the Alabama Supreme Court, the district court should not abstain from deciding the First Amendment question. *See id.* at 1287.

Before the district court was able to certify state law issues to the Alabama Supreme Court, the United States Supreme Court, on June 27, 2002, issued its decision in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). The Court held in *White* that "[t]he Minnesota Supreme Court's canon of judicial conduct prohibiting candidates for judicial election from announcing their views

3

on disputed legal and political issues violates the First Amendment." *Id.* at 788.

On July 19, 2002, the JIC withdrew its Advisory Opinion "in light of the decision of the United States Supreme Court in [*White*]."

The JIC members then filed a motion to dismiss on two grounds. First, they argued that the withdrawal of the Advisory Opinion in response to the *White* decision rendered moot all the issues in the case. Second, they stated that the Alabama Supreme Court Committee on the Canons was considering a change in the Canons that might be appropriate in response to *White*. They claimed that "there is little probability that the Alabama Supreme Court would accept any certified questions and respond to them under the present circumstances."

The district court granted the JIC members' motion to dismiss ruling that the case is moot. The CCA appeals, asking us to rule that the JIC enforcement policy violates the First Amendment.

## STANDARD OF REVIEW

Questions of mootness are reviewed de novo. *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 621 (11th Cir. 1994).

## DISCUSSION

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "Cases" or "Controversies." U.S. CONST. art. III, § 2, cl. 1. The

4

"case or controversy" requirement prevents federal courts from deciding a case on the merits if such a decision could no longer provide "meaningful relief" to the parties. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). Such a case would be moot, and a federal court determination of a moot case would constitute an impermissible advisory opinion. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam).

A case is not moot, though, only because a defendant voluntarily ceases the allegedly improper behavior. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982); *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953); *Jews for Jesus v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998). Otherwise, a party "could moot a challenge to a practice simply by changing the practice during the course of a lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." *Jews for Jesus*, 162 F.3d at 629. Only when "the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated'" are federal courts precluded from deciding the case on mootness grounds. *W.T. Grant Co.* 345 U.S. at 633 (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945); *see also Aladdin's Castle*, 455 U.S. at 289 n.10; *Jews for Jesus*, 162 F.3d at 629 (holding that the

airport authority's change in policy rendered the case moot because the change was a result of "substantial deliberation" and had been "consistently applied" for three years). The question we must decide, then, is whether the JIC members can "reasonably be expected" not to issue another opinion holding that judges who answer the CCA's questionnaire would violate the Canons.[1]

---

[1] The CCA requests that we rule on the constitutionality of the JIC "enforcement policy" rather than the Canons. This request by the CCA is problematic; we are unclear what that "policy" actually is. The only evidence the CCA provides of JIC's "enforcement policy" is the withdrawn Advisory Opinion. The withdrawn Advisory Opinion based its conclusions on the Canons. The Canons are currently being reconsidered in light of *White*. If there is any JIC "enforcement policy," it is a policy based on the Canons, the substance and meaning of which first must be clarified by the Alabama Supreme Court.

In our earlier decision in this case, we said that "it would 'infringe on the sovereign immunity of the states' if federal courts were to 'deprive the state courts of the opportunity to construe their own statutes, using the interpretative tools, presumptions, and standards they deem proper.'" *Pittman*, 267 F.3d at 1290 (citation omitted). This concern is especially significant when we are faced with "rules, such as the Canons of Judicial Ethics, that the state supreme court is not only charged with defining and applying, but that it can also repeal or rewrite as it deems necessary." *Id.* We initially ordered the district court to certify the state law issues in this case to the Alabama Supreme Court because there were "important, unsettled questions of state law that may alter or obviate the federal constitutional questions that the federal courts are to decide in this case." *Id.* at 1288.

Subsequent events made certification problematic, and thus the concerns we raised in our earlier opinion have not been addressed. The JIC's withdrawal of its Advisory Opinion did not clarify the "unsettled questions of state law." Rather, state law is even more unclear than before. Not only has the Advisory Opinion been withdrawn, but also the Alabama Supreme Court Committee on the Canons is considering a change in the Canons in response to *White*. The CCA's claim that it is now challenging the JIC's "enforcement policy" rather than the Canons is not enough to avoid the concerns we articulated in our earlier opinion.

Despite the lack of clarity regarding the state policy on which we would rule, we need not again remand to have the district court certify the state law issues to the Alabama Supreme Court. Subsequent events have rendered this case moot.

The CCA argues, pursuant to the Supreme Court's holding in *Aladdin's Castle*, that we are required to find that the CCA cannot reasonably expect that the JIC would allow judicial candidates to answer its questionnaire in the future. In *Aladdin's Castle*, a local ordinance was being challenged as unconstitutional. While the case regarding the ordinance was pending in the appellate court, the city revised the statute by omitting language from the ordinance that was being challenged on appeal. The appellate court was not "fully advised" of this change and ruled that the omitted language was unconstitutional. *Aladdin's Castle*, 455 U.S. at 288. The Supreme Court held that even if the appellate court was fully advised of the revision of the ordinance, the court nonetheless was "under no duty" to regard the issue as moot. *Id.* Because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the [d]istrict [c]ourt's judgment were vacated," the Court held that the federal courts maintained jurisdiction. *Id.* at 289. This was especially true given that the city announced at oral arguments its intention to reenact the same provision if the district court's judgment was vacated. *Id.* at 289 n.11. The CCA argues, then, that just as the city's revision of its ordinance in *Aladdin's Castle* did not render moot the case regarding the constitutionality of its ordinance, the JIC's

7

withdrawal of its Advisory Opinion does not render moot the case regarding the constitutionality of the JIC's enforcement policy.

The present case, though, is distinguishable from *Aladdin's Castle.* Unlike the defendant in *Aladdin's Castle*, the JIC members have stated no intention to reenact their Advisory Opinion. Instead, the JIC members have professed the contrary intent, stating in a pleading submitted to the district court that they "hereby represent that the JIC will not file charges against any judge in connection with the CCA questionnaire." The JIC members took this position because they "acknowledged the superceding import of the United States Supreme Court decision in [*White*]," which held that "prohibiting candidates for judicial election from announcing their views on disputed legal and political issues violates the First Amendment." *White*, 536 U.S. at 788. The JIC members also have represented that the Alabama Supreme Court Committee on the Canons is reconsidering existing Canons in light of *White*, which, if modified, would necessarily change the JIC position. Such modification would force the JIC to apply different Canons.

In other words, the JIC members' representation to the district court that they "will not file charges against any judge in connection with the CCA questionnaire" was not made so as to merely avoid a ruling by the federal court.

Rather, the JIC's withdrawal of its Advisory Opinion and its representation to the district court are a result of subsequent events out of the JIC's control that effected a change in its position regarding the propriety of answering the CCA questionnaire. The JIC's opinions must comply with both the U.S. Constitution and the Canons. The Supreme Court's decision in *White* and the Alabama Supreme Court's Committee on the Canons' decision to reevaluate the Canons in light of *White* changed the legal landscape on which the JIC initially based its Advisory Opinion. Thus, the CCA has every reason to believe that the JIC's representation is genuine, and can reasonably expect that the JIC will not issue another opinion preventing judges from answering the questionnaire at issue in this case.[2]

In short, we would be overstepping our judicial authority if we were to rule on the constitutionality of the JIC's supposed "enforcement policy" that is evidenced only by a withdrawn Advisory Opinion that was an interpretation of

---

[2] The CCA also claims that the case is not moot under the "capable of repetition, yet evading review" doctrine. That doctrine applies when two conditions are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1324 n.6 (11th Cir. 2001) (citation omitted). Our holding that the CCA cannot reasonably expect to be subjected to the same action again by the JIC precludes application of the "capable of repetition, yet evading review" doctrine because the second condition is not met. *See Jews for Jesus*, 162 F.3d at 629-30 n.4.

9

Canons that are currently being reconsidered. Not only are there still unsettled questions of state law, but the CCA can be reasonably certain that the JIC members will never, according to their own representation, "file charges against any judge in connection with the CCA questionnaire." A ruling by us would not grant a party any meaningful relief, but rather would be an impermissible advisory opinion about a non-existing "enforcement policy."

Consequently, we AFFIRM the district court's determination that this case is moot.

**AFFIRMED.**