[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15629

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2011
JOHN LEY
CLERK

D. C. Docket No. 05-01267-CV-J-34-JRK

JACKSONVILLE PROPERTY RIGHTS ASSOCIATION, INC.,
a Florida non-profit corporation,
HORTON ENTERPRISES, INC.,
a Florida corporation d.b.a. The New Solid Gold,
HARTSOCK ENTERPRISES, INC.,
a Florida corporation d.b.a. Doll House,

Plaintiffs-Appellants
Cross-Appellees,

versus

CITY OF JACKSONVILLE, FL,
a Florida municipal corporation,

Defendant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 25, 2011)

Before TJOFLAT, HILL and ALARCÓN,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal stems from a city's attempt to control the location of nude dancing establishments operating within its borders. While both the city and the nude dancing establishments appeal the district court's order granting in part and denying in part both parties' motions for summary judgment,[1] the city has, during the pendency of this appeal, legislatively removed the two provisions underlying the dancing clubs' claims. Based on this subsequent action, we cannot entertain the merits of the parties' arguments.

I.

A.

Horton Enterprises, Inc. and Hartstock Enterprises, Inc. (collectively, the "Plaintiffs")[2] operate adult entertainment establishments in Jacksonville, Florida. Horton has operated its club, "The New Solid Gold," since 1982, and Hartstock has

---

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] The district court's order was a final judgment, and we have jurisdiction under 28 U.S.C. § 1291.

[2] Jacksonville Property Rights Association (the "Association") is the third plaintiff in this case. This group is an association of businesses providing live entertainment in Jacksonville with one or more members who want to establish adult establishments in Jacksonville. All references to the Plaintiffs apply to the Association as well.

operated "The Doll House" since 1986.  These two establishments constitute two of Jacksonville's three fully nude dancing establishments.

To lawfully operate in the City of Jacksonville (the "City"), a business's physical location must satisfy three separate zoning criteria: (1) geographic zoning district; (2) land-use designation (i.e., commercial or heavy industrial); and, for certain establishments, such as adult businesses, (3) minimum distances—termed "buffer" restrictions—from other locations, such as churches and schools.

The City creates these zoning criteria in two ways.  First, the City's Comprehensive Plan (the "Plan") acts as the zoning "constitution"[3]; the Plan is an overarching planning document that is not easily changed and with which all subsequent zoning and land-use legislation must comply.[4]  Second, the City passes zoning ordinances that amend its municipal code; these ordinances and the municipal code enforce—and must be consistent with—relevant portions of the Plan.

Prior to 2005, the Plan permitted adult establishments like those operated by

---

[3] See Citrus Cnty. v. Halls River Dev., Inc., 8 So. 3d 413, 420–21 (Fla. 5th Dist. Ct. App. 2009).

[4] The general procedures for amending a comprehensive plan are found in Fla. Stat. § 163.3184.  Larger cities, such as Jacksonville, may also amend their comprehensive plans under a pilot program providing limited State oversight.  See id. §163.32465; see also infra, note 18.  As described in part I.C, infra, the City used these pilot procedures to amend the Plan in 2010.

3

the Plaintiffs to operate in the Commercial/Community General-2 zoning district ("CCG-2") and, within CCG-2 districts, only on plots designated for Heavy Industrial land use ("HI"). Adult establishments must also comply with various buffer restrictions established by the City and the State of Florida.[5] The Plaintiffs' locations did not comply with some of these requirements, but were allowed to operate as lawful non-conforming uses because their use predated the restrictions.

The City's adult zoning scheme[6]—as written—also subjected adult entertainment businesses to another regulatory wrinkle. A section of the City's municipal code—not the Plan—required adult businesses to obtain discretionary exceptions from the local sheriff before commencing operations. Jacksonville Municipal Code § 656.725(a)–(j). Thus, as written, the City's adult zoning scheme did not permit adult businesses to relocate or commence operations in any area—even the CCG-2 district zoned for HI—as of right.[7] Similar discretionary

---

[5] The specific buffer restrictions for adult entertainment business can be found in the Jacksonville Municipal Code § 656.1103(a), which requires adult businesses to be at least (1) 1,000 feet from another adult entertainment business; (2) 500 feet from the boundary of a residential district; (3) 1,000 feet from a school or a church; and (4) 500 feet from any business licensed to serve liquor. Florida state law also prohibits an adult business from locating within 2,500 feet of an elementary school, a middle school, or a secondary school unless given prior approval by the relevant county or city government. Fla. Stat. § 847.0134(1).

[6] We refer to the City's various land use regulations for adult businesses as the "adult zoning scheme."

[7] In the zoning context, "as of right" means that, provided the land owner meets all other criteria, the local government administering the zoning scheme must permit a land owner to operate without seeking any discretionary exceptions.

exceptions imposed by the City, though not the exceptions in § 656.725(a)–(j), were declared unconstitutional by this court in <u>Lady J. Lingerie, Inc. v. City of Jacksonville</u>, 176 F.3d 1358 (11th Cir. 1999), where we held that adult businesses must be permitted some areas in which they could operate as of right. <u>Id.</u> at 1361–63.[8] The City has never enforced the § 656.725(a)–(j) exceptions, however. It has not received a new business permit for an adult entertainment establishment in over a decade and therefore has had no occasion to enforce the provisions.

In 2005, the City altered its adult zoning scheme in two ways. First, it amended the Plan to remove references to adult entertainment in the description of HI land use. Prior to 2005, the description of HI included the following language: "[a]dult entertainment facilities are allowed by right." The 2005 amendments deleted this passage and placed a similar reference in the description of Community/General Commercial land use ("C/GC"): "[a]dult entertainment facilities are allowed by right only in Zoning District CCG-2." The implication of this change was that adult entertainment would be permitted in all CCG-2 districts, not just those districts with HI land use designations.

However, the City left in place a statement under the broader description of

_____

[8] The City removed the offending exceptions at issue in <u>Lady J. Lingerie, Inc. v. City of Jacksonville</u>, 176 F.3d 1358 (11th Cir. 1999). A 2007 ordinance amended the City's municipal code to classify "adult entertainment" as a "permitted" use in the CCG-2 zoning district.

"commercial" uses, which preceded the more specific description of C/GC: "Adult entertainment facilities are allowed by right in the heavy industrial land use category, but not in commercial." The reference to "commercial" included the C/GC land use designation. Until February 2009, the City interpreted the Plan as permitting adult entertainment only in CCG-2 zoned for HI. J. Final Pre-Trial Statement 14.

Second, the City passed Ordinance 2005-743-E (the "Ordinance"), amending Jacksonville's Municipal Code. Pertinent to this appeal, the Ordinance included a mandatory amortization provision requiring any adult business that did not conform to the City's adult zoning scheme—i.e., the Plaintiffs—to cease operation at that non-conforming location by November 10, 2010. Jacksonville Municipal Code § 656.725(k). If the Plaintiffs wished to continue operating, they would have to move to a new location in compliance with the adult zoning scheme. Neither of these changes eliminated the discretionary exceptions found in § 656.725(a)–(j), and those provisions remained on the books.

### B.

The Plaintiffs sued the City in the United States District Court for the Middle District of Florida on December 14, 2005.[9] After over two years of

_____

[9] The initial complaint challenged a number of other provisions regulating adult businesses which are not at issue in this appeal. That complaint also included two additional

settlement negotiations, the Plaintiffs filed an amended complaint on May 28, 2008. The amended complaint sought relief under 42 U.S.C. § 1983, alleging that the City's adult zoning scheme violated their right under the First Amendment to present nude dancing.[10]

The Plaintiffs alleged that the City's adult zoning scheme was an invalid time, manner and place restriction because it did not leave the Plaintiffs with adequate alternative avenues for their protected activities as required by City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50, 53–54, 106 S. Ct. 925, 930, 932, 89 L. Ed. 2d 29 (1986).[11] They argued that, although the amortization provision would force them to move, the City's adult zoning scheme did not provide any locations where they could relocate as of right.

The Plaintiffs pointed to two provisions establishing the violation. First,

---

plaintiffs: E.M.R.O Corp., a Florida corporation also operating a fully nude dancing establishment; and Simone Kelcher, an individual who works as a nude dancer regulated under Jacksonville's adult business laws. Neither party appears in the amended complaint and they presumably have abandoned their claims.

[10] See Barnes v. Glen Theatre Co., 501 U.S. 560, 566, 111 S. Ct. 2456, 2460, 115 L. Ed. 2d 504 (1991) ("[N]ude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so."). Here, the Plaintiffs only alleged that the City's adult zoning scheme violated the First Amendment. Thus, anytime we refer to something as "unconstitutional," we are referring to the First Amendment and no other provision of the United States Constitution.

[11] Under City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986), content-neutral laws that infringe on speech are acceptable as "time, manner, and place" regulations if "they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." Id. at 47, 106 S. Ct. at 928.

§ 656.725(a)–(j)'s requirements that adult businesses receive discretionary zoning exceptions rendered any available locations effectively unavailable for the purpose of counting alternative locations. See Lady J, 176 F.3d at 1361–63. Second, the Plaintiffs argued that the combined effect of the Plan and various buffer restrictions completely foreclosed all alternative locations. For this second theory, the Plaintiffs pointed to the Plan's requirements that adult businesses locate in CCG-2 districts zoned for HI land use. According to the Plaintiffs, none of the locations satisfying these criteria also complied with the various buffer restrictions.[12] Therefore, the City's adult zoning scheme effectively zoned adult businesses out of existence.

To remedy these violations, the Plaintiffs requested a declaratory judgment

---

[12] The Plaintiffs also alleged that the City's zoning scheme—particularly the mandatory amortization provision—was unconstitutional for three other reasons. First, the City's "constant changes" to its adult business regulations "effectively denie[d] anyone considering the establishment or relocation of an adult entertainment business of the 'reasonable opportunity' to do so." Am. Compl. ¶ 40. Second, "the primary purpose of amortization of the plaintiffs' businesses is content-based, and such changes [to the City's zoning scheme] and amortizations are not driven by predominantly content-neutral reasons." Id. ¶ 45. Third, the amortization provision impermissibly discriminated against the Plaintiffs' businesses because the City imposed the mandatory amortization only on adult entertainment businesses. Id. ¶ 47. These three arguments were not raised on appeal.

The allegations described above and in the text constituted only Count One of the two counts brought in the amended complaint. Count Two was brought by the Association, which alleged that one or more of its members "wish[ed] to acquire and establish a new site in Jacksonville for operation of an adult entertainment establishment" but, because of the violations described above, were "both chilled and directly prevented from doing so." Id. ¶ 60. Because this argument requires the same analysis as does the Plaintiffs' arguments detailed in the text, we will not independently discuss Count Two.

that the City's adult zoning scheme—including the mandatory amortization provision—was unconstitutional. They also sought a permanent injunction barring the City from either enforcing the amortization provision against the Plaintiffs at their current locations or preventing them from moving to new locations.[13]

The City's amended answer asserted that the City's adult zoning scheme provided the Plaintiffs with available sites to which they could relocate. First, the City denied that the exception requirements in § 656.725(a)–(j) were enforceable or had been enforced. Am. Answer ¶ 30. It claimed that, because the Plan permitted adult businesses "as of right" in CCG-2 districts, the exception requirements were invalid as to locations within CCG-2 districts. Second, the City admitted that the adult zoning scheme confined adult businesses to CCG-2 districts zoned for HI, but it denied that these requirements left no permissible locations for adult businesses. Id. ¶ 53(b)(3)–(8).

In January 2009, both sides filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. The City's motion maintained that the adult zoning scheme—locating adult businesses within CCG-2 districts zoned for HI—permitted 372 alternative sites, which provided sufficient alternative locations

---

[13] The Plaintiffs' request for injunctive relief against prohibitions on "new location[s]" for adult entertainment businesses was directed primarily at the Association's Count Two claim for relief on behalf of one or more of its members. Id. Prayer for Relief ¶ 2.

The Plaintiffs also requested attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

under Renton's time, manner and place requirements.

However, on February 17, 2009, the City completely changed its theory of the case. In its response to the Plaintiffs' motion for summary judgment, the City asserted for the first time that the Plan allowed adult businesses to locate in CCG-2 districts zoned for C/GC and not in areas zoned for HI. This new interpretation produced ninety-one available locations to which the Plaintiffs could relocate; again, the City argued that these sites satisfied the time, manner, and place test.

Noting the confused issues, the district court ordered the parties to re-file their motions for summary judgment, and each again filed cross-motions for summary judgment. In this round of briefing, the parties agreed that the only issue for the district court was whether the City's adult zoning scheme permitted an adequate number of alternative sites for the Plaintiffs' businesses.

The City argued that the adult zoning scheme provided sufficient alternative locations for adult businesses. It pointed to the Plan's C/GC land use designation, which states that adult uses are permitted as of right in the CCG-2 zoning district. Emphasizing this point, the City noted that, within the Plan's section describing HI land use, adult businesses are nowhere mentioned; the 2005 amendment eliminated the requirement that adult businesses locate in HI zones. The remaining reference to HI under the general description of "commercial" uses was a "clerical oversight"

and the City asked the court to treat it as such. To prove this point, the City pointed to legislative history demonstrating that the 2005 amendments to the Plan were intended to remove the HI requirement for adult businesses. Regarding the exception requirement, the City argued that the Plan explicitly permitted adult establishments in CCG-2 districts as of right; the provisions requiring exceptions, § 656.725(a)–(j), conflicted with the Plan and were thus unenforceable.

The Plaintiffs maintained that the Plan required adult businesses to locate in CCG-2 districts zoned for HI and that no such locations also satisfied the various buffer requirements.[14] Reading the Plan as the City did, the Plaintiffs argued, violated Florida's norms of statutory construction because it would "render a nullity" the Plan's statement that "[a]dult entertainment facilities are allowed by right in the heavy industrial land use category, but not in commercial." Regarding the exceptions, the Plaintiffs maintained that their existence rendered all otherwise permissible locations unavailable for the purpose of time, manner, and place regulations.

The Plaintiffs did not ask the court to strike down the obstacles prohibiting their relocation. They instead argued that, because the adult zoning scheme provided no available locations, the amortization provision was unconstitutional.

---

[14] The City stipulated that there were no sites within the CCG-2 district zoned for HI that also met the buffer restrictions.

They took a similar tact when discussing the zoning exceptions. The Plaintiffs argued that the zoning exception requirements created no available locations, rendering the amortization provision unconstitutional. It was only in the alternative that the Plaintiffs asked the district court to declare the exceptions unconstitutional under Lady J.

On September 30, 2009, the district court granted in part and denied in part each side's motion. The court accepted the parties' main stipulations: (1) the City's adult zoning scheme should be reviewed as a time, manner, and place restriction under Renton; and (2) the only issue under Renton was whether the adult zoning scheme—the conflicting sentences within the Plan and § 656.725(a)–(j)'s exception requirements—actually permited the Plaintiffs to relocate to any of the ninety-one sites the City claimed were available.

Regarding the Plan, the district court agreed with the City and found that the Plan did not require adult businesses to locate in HI zones and that the Plan permitted adult businesses to operate as of right in CCG-2 districts zoned for C/CG. To reach this conclusion, the court first found that the Plan was ambiguous on its face. The Plan's statement that adult businesses must locate in HI zones conflicted with its subsequent statement that adult businesses may locate as of right in CCG-2 districts. The two statements were, in the court's view, irreconcilable.

12

To solve this ambiguity, the court turned to the legislative history of the 2005 amendments to the Plan. According to the district court, the 2005 amendments were designed to change the land use designation from HI to C/GC. The prior version of the Plan mentioned adult entertainment businesses in the section dealing with HI land usage; the 2005 revisions deleted those provisions and inserted the relevant text under the C/GC section. The remaining reference to HI was, the court agreed, a scrivener's error. That language arose in a general description of commercial land uses and, in the court's view, the most likely explanation for this error was that the City Council simply overlooked this reference while it focused narrowly on the relevant land use categories.

Regarding the exceptions, the district court found the provisions invalid under two alternative theories. First, the provisions requiring an exception conflicted with the Plan's pronouncement that adult businesses were permitted as of right in CCG-2 districts. Because the Plan is akin to a constitution, the conflicting ordinance provisions, § 656.725(a)–(j), were invalid. Second, the court determined that, if the Plan did not invalidate the exception requirements, those provisions were unconstitutional under Lady J. To remedy those failings, the court found the exception provisions severable from the rest of the City's zoning scheme.

13

With these rulings in place, the district court found that the amortization requirement was constitutional. The Plaintiffs would be required to move to one of the ninety-one available locations in a CCG-2 district zoned for C/GC land use. None of those ninety-one sites would be subject to the exception requirements. The district court entered judgment to that effect on October 5, 2009, declaring the exception requirements unconstitutional under the First Amendment and upholding the remainder of the City's adult zoning scheme.

Both parties appealed the judgment. The Plaintiffs appealed the district court's ruling upholding the mandatory amortization provision. They argued that the district court violated Florida's norms of statutory construction by essentially deleting the Plan's references to HI. In the alternative, the Plaintiffs claimed that the district court did not have jurisdiction to render an "authoritative" reading of the Plan, and therefore could not "rewrite" the Plan in the manner it did; the court's only choice was to declare the entire scheme unconstitutional and permit the Plaintiffs to remain at their locations. The City also appealed the district court's ruling declaring the exceptions unconstitutional and enjoining their enforcement.[15] To preserve the status quo, the district court enjoined enforcement of the

_____

[15] During the briefing to this court, the Plaintiffs moved for leave to file a surreply to the City's reply brief in its cross-appeal, or in the alternative to strike the City's reply brief. This motion was carried with the case. Having considered the arguments, the Plaintiffs' motion is denied.

14

amortization provision until the resolution of this appeal.

C.

While this appeal remained pending, the City passed legislation consistent with their legal position. First, the City amended § 656.725(a)–(j) to remove all references to discretionary exceptions; this amendment became law on November 30, 2009.[16]

Second, the City passed an amendment to the Plan on February 26, 2010, deleting the remaining suggestion that adult businesses must locate in HI zones.[17] This enactment did not automatically take effect, however.[18] The Plaintiffs challenged the amendments in a state administrative hearing, alleging that the

---

[16] The amendment was passed as Ordinance No. 2009-835-E. It passed the Jacksonville City Council on November 24, 2009, and was approved by the mayor on November 30, 2009.

[17] The amendment was passed as Ordinance 2010-35-E. It passed the City Council on February 23, 2010, and was approved by the mayor on February 26, 2010.

[18] As stated above, supra, note 4, the City amended the Plan pursuant to Florida's pilot program for larger cities, Fla. Stat. § 163.32465. This pilot program applies to all amendments to these cities' comprehensive plans unless the amendments concern one of several enumerated topics. See id. § 163.32465(3)(b)–(e). Under the pilot program, a city must first hold a public hearing on the amendment and then pass the proposed amendment through its legislative body. After passage, the city must transmit the proposed changes to the relevant State agency for comment, which the agency must provide to the city within thirty days. Id. § 163.32465(4)(a)–(b). After holding a second hearing and again receiving approval from the city's legislative body, see id. § 163.32465(5)(a), the amendment will become final in thirty-one days, id. § 163.32465(6)(g), unless an "affected person" or a State planning agency requests a formal hearing before an administrative law judge to determine whether the amendments comply with relevant state laws, id. § 163.32465(6)(a)–(b). If the judge approves the plan, then the State planning agency has thirty days to: (1) approve the plan, id. § 163.32465(6)(f)(2); or (2) refer the amendment to a separate State agency if the State planning agency finds the amendment not in compliance, id. § 163.32465(6)(f)(1).

amendments failed to comply with various procedural and substantive requirements. On January 11, 2011, the administrative law judge found no such errors and ruled that the amendment to the Plan was in compliance with Florida law. The amendments took effect on February 21, 2011 when the Florida Department of Community Affairs issued its order accepting the administrative law judge's recommendations.[19]

## II.

## A.

This subsequent legislation impacts this court's jurisdiction. Under Article III of the Constitution, federal courts may only hear live "cases" and "controversies." U.S. Const. art. III, § 2. "'If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed.'" Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting Troiano v. Supervisor of Elections, 382 F.3d 1276, 1281–82 (11th Cir. 2004)) (omissions in original).

---

[19] Although the Plaintiffs have appealed this decision to Florida's First District Court of Appeal, the Plaintiffs acknowledge that the Department of Community Affairs's approval means that the City's amendments to the Plan are now in effect. Their March 2, 2011 letter to this court implies, however, that this approval might not affect our jurisdiction: "it will not be clear until after that appeal is resolved whether [the amendment] will remain in effect." Whatever the outcome of the appeal, the Plaintiffs have acknowledged that the City completed its effort to amend the Plan to remove the conflicting passages.

"The doctrine of voluntary cessation provides an important exception to the general rule" of mootness. Troiano, 382 F.3d at 1282. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S. Ct. 1070, 1074, 71 L. Ed. 2d 152 (1982)). "Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998). Accordingly, the voluntary cessation of challenged conduct will only moot a claim when there is no "reasonable expectation" that the accused litigant will resume the conduct after the lawsuit is dismissed. Id.

Generally, the "party asserting mootness" bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." Laidlaw, 528 U.S. at 189, 120 S. Ct. at 708 (internal citations and alteration omitted). We also recognize, however, that "government actor[s enjoy] a rebuttable presumption that the objectionable behavior will not recur." Troiano,

17

382 F.3d at 1283 (emphasis in original); see also Harrell v. The Fla. Bar, 608 F.3d 1241, 1266 (11th Cir. 2010) ("[W]e have applied a 'rebuttable presumption' in favor of governmental actors . . . ."); Sheely, 505 F.3d at 1184 ("[G]overnment actors receive the benefit of a rebuttable presumption that the offending behavior will not recur."). Hence, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." Beta Upsilon Chi Upsilon Chapter v. Machen, 586 F.3d 908, 917 (11th Cir. 2009) (citations omitted) (collecting cases). And "this Court has consistently held that a challenge to government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." Troiano, 382 F.3d at 1285.

Here, the City has removed § 656.725's exceptions and deleted from the Plan the provisions the Plaintiffs claim foreclose their ability to relocate. Therefore, the district court's order enjoining enforcement of the exceptions currently enjoins nothing and the Plaintiffs appeal the district court's interpretation of a sentence in the Plan that no longer exists.

After reviewing the record, we are satisfied that the City has not passed this legislation to manipulate our jurisdiction. Regarding the § 656.725(a)–(j) exceptions, the City maintained throughout the litigation that these provisions were

18

inapplicable, and the district court based its ruling in part on the conflict between these provisions and the Plan's insistence that adult businesses belonged in CCG-2 districts as of right. Combined with the fact that this court has already declared similar exceptions unconstitutional, see Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1361–63 (11th Cir. 1999), we see nothing in the record suggesting that the City will re-enact the discretionary exceptions.

We are similarly convinced that the City will not re-insert the HI reference into the Plan. First, this amendment is consistent with the City's—albeit brand new—position in the district court. The City argued that the Plan's reference to HI should have been deleted in the 2005 amendments and remained merely as a scrivener's error; deleting the provision legislatively treats it as such. Second, amending the Plan is a time-consuming endeavor that requires approval of a State agency—in this case, the Florida Department for Community Affairs. The City is unlikely to jump through those bureaucratic hoops again in order to re-insert a provision—the HI reference—that it claims remained on the books in error. These appeals are therefore moot the parties' appeals must be dismissed. See Thomas v. Bryant, 614 F.3d 1288, 1294 (11th Cir. 2010) ("Where a case becomes moot after the district court enters judgment but before the appellate court has issued a decision, the appellate court must dismiss the appeal, vacate the district court's

19

judgment, and remand with instructions to dismiss as moot." (citation and internal quotations omitted)).[20]

## B.

Our decision above does not address fully the Plaintiffs' concerns. They argue that they are entitled to a declaration that, from November 2005 to February 17, 2009, their businesses constituted lawful conforming uses under the City's zoning laws. This time range refers to the period between the date the Ordinance took effect, thereby imposing the mandatory amortization provision, and the date that City interpreted the Plan to allow adult businesses in CCG-2 districts zoned for C/GC uses. The Plaintiffs' argument is not intuitive and requires explanation before it can be disposed of.

The Plaintiffs' argument proceeds as follows. First, the City's position until February 2009 was that the Plaintiffs must relocate to CCG-2 districts zoned for HI. Second, the parties agree that no such locations existed that also complied with

---

[20] Pending in the district court are the Plaintiffs' motions for attorneys' fees under 42 U.S.C. § 1988. We note that our decision to dismiss each parties' appeal, vacate the judgment, and instruct the district court to dismiss the case will not deprive the Plaintiffs of the opportunity to seek those § 1988 attorneys' fees. See Thomas v. Bryant, 614 F.3d 1288, 1294 (11th Cir. 2010) ("'[W]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still "prevailing parties" for the purposes of attorney's fees for the district court litigation.'" (quoting Diffenderfer v. Gomez-Colon, 587 F.3d 445, 454 (1st Cir. 2009))); Kimbrough v. Bowman Transp., Inc., 929 F.2d 599, 599 (11th Cir. 1991) (vacating the judgment and instructing the district court to dismiss the case following the parties' settlement, but remanding to determine attorneys' fees).

various buffer restrictions. Third, these conditions made the entire scheme unconstitutional because the City was forcing the Plaintiffs to cease their constitutionally protected conduct at their current locations while offering no alternate means of communication. See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50, 106 S. Ct. 925, 930, 89 L. Ed. 2d 29 (1986) (holding that governments may regulate the location of adult entertainment, which is protected under the First Amendment, provided that the zoning ordinances "serve a substantial government interest and allow[] for reasonable alternative avenues of communication"). Fourth, because the adult zoning scheme was unconstitutional during those three and a half years, the Plaintiffs' property could not be non-conforming because, as the Plaintiffs say, "non-conformity can [not] be created by non-compliance with an unconstitutional law." Appellant's Opening Br. 43. Finally, this declaration could be useful to the Plaintiffs because, as they claim, "it is not entirely clear that the amortization ordinance would apply (or that the City would even attempt to enforce it) if the City were told that the plaintiffs' uses did not become non-conforming until long after enactment of the amortization ordinance." Id. at 43–44. In short, the declaration might prevent the City from forcing the Plaintiffs to move.

While this argument is conceptually interesting, two defects prohibit us from

deciding this issue. First, it is not clear that the Plaintiffs' argument presents us with a live case or controversy. The Plaintiffs argue that a declaration might affect their rights because the mandatory amortization provision might not apply, or the City might choose not to enforce the amortization provision, against uses that became non-conforming in 2009. In short, the Plaintiffs ask this court to issue a declaration on an issue that might never impact their substantive rights. They therefore ask this court either to issue an impermissible advisory opinion, see Massachusetts v. EPA, 549 U.S. 497, 516, 127 S. Ct. 1438, 1452, 167 L. Ed. 2d 248 (2007) (citing Hayburn's Case, 2 U.S. (2 Dall.) 408, 1. L. Ed. 436 (1792)), or to decide a case that is not yet ripe for decision, see Mulhall v. UNITED HERE Local 355, 618 F.3d 1279, 1291 (11th Cir. 2010) ("The function of the ripeness doctrine is to 'protect[ ] federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.'" (quoting Harrell, 608 F.3d at 1257–58) (alteration in original)). Neither doctrine permits us to opine on the merits of the Plaintiffs' argument.

Alternatively, the Plaintiffs waived this argument because they never raised this issue in the district court. Their motion for summary judgment reads:

> Because the City's adult zoning scheme is, in its entirety, a facially unconstitutional prior restraint on expression, the businesses of plaintiffs Horton and Hartsock cannot properly be deemed non-conforming uses, as they are in conformance with all

22

> constitutional zoning restrictions. Consequently, these plaintiffs seek a declaration that their uses are fully conforming uses and are not subject to the restrictions and amortization provisions otherwise applicable to non-conforming uses.

Pls.' New Mot. for Summ. J. 13–14. Although this passage refers to a declaratory judgment, it did not present the more esoteric argument pressed on appeal. Notwithstanding their claims to the contrary, see Appellants' Reply/Cross-Appellees' Br. 17 n.9, the Plaintiffs were aware that they might require this peculiar form of relief. The City changed its interpretation to the Plan during the first round of summary judgment briefing; the Plaintiffs therefore knew that the district court was being asked to, in the Plaintiffs' words, "re-write" the Plan. During the revised summary judgment briefing, the Plaintiffs could have requested this more specific relief.

## III.

For the foregoing reasons, the parties' appeals are DISMISSED, the judgment is VACATED, and the case is REMANDED to the district court with instructions to dismiss this action.

SO ORDERED.